ACCEPTED
03-15-00350-CV
8083814
THIRD COURT OF APPEALS
AUSTIN, TEXAS
12/3/2015 6:50:20 PM
JEFFREY D. KYLE
CLERK

**No. 03-15-00350-CV**

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
12/3/2015 6:50:20 PM
JEFFREY D. KYLE
Clerk

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

**GERALD R. HADDOX and SHARON HADDOX**
*Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
*Appellees.*

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. C-1-CV-14-005024

**APPELLANTS' BRIEF**

KARLA HUERTAS, SBN: 24087765
WILLIAM B. GAMMON, SBN: 07611280
**GAMMON LAW OFFICE, PLLC.**
1201 Spyglass Drive, Suite 100
Austin, Texas 78746
Phone: 512-444-4529
Fax: 512-545-4279
Firm@GammonLawOffice.com
COUNSEL FOR APPELLANTS

**ORAL ARGUMENT REQUESTED**

**No. 03-15-00350-CV**

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

**GERALD R. HADDOX and SHARON HADDOX**
*Appellants,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
*Appellees.*

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. C-1-CV-14-005024

**APPELLANTS' BRIEF**

KARLA HUERTAS, SBN: 24087765
WILLIAM B. GAMMON, SBN: 07611280
**GAMMON LAW OFFICE, PLLC.**
1201 Spyglass Drive, Suite 100
Austin, Texas 78746
Phone: 512-444-4529
Fax: 512-545-4279
Firm@GammonLawOffice.com
COUNSEL FOR APPELLANTS

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

*Appellants:*

*Gerald R. Haddox and
Sharon Haddox*

*Appellants' Counsel:*
WILLIAM B. GAMMON, SBN: 07611280
KARLA HUERTAS, SBN: 24087765
**GAMMON LAW OFFICE, PLLC.**
1201 Spyglass Drive, Suite 100
Austin, Texas 78746
Phone: 512-444-4529
Fax: 512-545-4279
Firm@GammonLawOffice.com


*Appellee:*
*Federal National Mortgage
Association*

*Appellee's Counsel:*
Sarah S. Robbins, SBN: 24074966
Hughes, Watters & Askanase, LLP
333 Clay, 29th Floor
Houston, Texas 77002
Telephone: 713.759.0818
Facsimile: 713.759.6834
ssr@hwallp.com

# TABLE OF CONTENTS

**IDENTITY OF PARTIES AND COUNSEL**.............................................3

**TABLE OF CONTENTS**.................................................................4

**TABLE OF AUTHORITIES** ..........................................................5

**STATEMENT OF THE CASE** .......................................................6

**RECOMMENDATION ON ORAL ARGUMENT** ..............................7

**ISSUES PRESENTED**.................................................................8

**STATEMENT OF FACTS** ............................................................8

**SUMMARY OF THE ARGUMENT**……………………………….12

**ARGUMENT** ..............................................................................12

    **A. Standard of Review**……………………………………........12

    **B. The County Court lacked jurisdiction**……………………….14

    **C. Collateral estoppel bars FNMA from bringing**

    **the present forcible detainer action**………………………………..20

**PRAYER** .....................................................................................21

**APPENDIX** ................................................................................23

**CERTIFICATE OF SERVICE** ....................................................22

**CERTIFICATE OF COMPLIANCE** ...........................................22

# INDEX OF AUTHORITIES

**TEXAS SUPREME COURT CASES**

*Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984)     21
*Collins v. Ison-Newsome*, 73 S.W.3d 178, 180 (Tex. 2001)     17
*Freedom Communs., Inc. v. Coronado*, 372 S.W.3d 621, 623
    (Tex. 2012)     18
*Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001)     17
*Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990)     14
*Tex. Lottery Comm'n v. First State Bank of Dequeen*,
    325 S.W.3d 628, 635 (Tex. 2010)     16, 18

**TEXAS COURTS OF APPEALS CASES**
*Charleston v. Allen*, 420 S.W.3d 134
    (Tex. App.-Texarkana 2012, no pet. h.)     17
*Doncer v. Dickerson*, 81 S.W.3d 349
    (Tex. App. – El Paso 2002, no pet.)     15
*HSBC Bank USA, N.A. v. Watson*, 377 S.W.3d 766
    (Tex. App.—Dallas 2012, pet. dism'd)     19
*In re H.C.S.*, 219 S.W.3d 33
    (Tex. App. – San Antonio 2006, no pet.)     15
*Mays v. Pierce*, 203 S.W.3d 564
    (Tex. App. Houston [14th Dist.] 2006)     14
*Save Our Springs Alliance, Inc. v. City of Dripping Springs*,
    304 S.W.3d 871 (Tex. App.-Austin 2010)     13, 15

**TEXAS RULES**

Texas Rule of Appellate Procedure 47.7     17
Tex. R. Evid. 301(b)     18

**TEXAS CODES AND STATUTES**

Tex. Business Organizations Code §153.309(a)(1)     15
Tex. Business Organizations Code §153.309(a)(2)     15
Tex. Business Organizations Code §9.251     16, 17, 18, 19
Tex. Business Organizations Code § 1.002(28)     18
Tex. Local Government Code §192.007(a)     10, 20

## STATEMENT OF THE CASE

1.01   On May 2, 2014, Appellee Federal National Mortgage Association ("FNMA") filed a forcible detainer action against the Appellants Gerald R. Haddox and Sharon Haddox ("Appellants" and/or "Haddoxes").[1]

1.02   On May 20, 2014, Appellants filed their Original Answer, Plea to the Jurisdiction and Motion to Dismiss. Following a hearing on May 22, 2014, Appellants' motion was granted and the court entered an Order dismissing Appellee's case.[2]

1.03   On May 27, 2014, Appellee appealed the justice court's decision in this forcible detainer action to the county court at law.

1.04   A trial was held *de novo* on December 5, 2014 during which the trial court entered an Order dismissing Appellee's case with prejudice.[3]

1.05   Appellee filed a motion for new trial on December 18, 2014 and, following a hearing on January 6, 2015, the motion was granted on January 12, 2015.[4]

1.06   The case proceeded to a second *de novo* trial and on May 29, 2015 Judge Eric M. Shepperd entered his Order awarding possession of the property to Appellee.[5] It is from this Order that the Haddoxes appeal.

---

[1]  (CR 63 - 83)
[2] (CR 18)
[3] (CR 117)
[4] (CR 169)
[5] (CR 207-208)

## STATEMENT REGARDING ORAL ARGUMENT

Appellants suggest that the issues presented should not be determined on the record alone and that oral argument is necessary. The issues presented have become sufficiently muddled by misinterpretation and the law sufficiently misapplied that oral argument would benefit the panel.

*/s/ William B. Gammon*
William B. Gammon

**TO THE HONORABLE THIRD DISTRICT COURT OF APPEALS:**

Appellants, Gerald R. Haddox and Sharon Haddox, plead that this honorable Court of Appeals reverse the judgment of the Travis County Court at Law Number 2 and render judgment in favor of Appellants.

## ISSUES PRESENTED

2.01 Did the County Court have jurisdiction to determine right of possession when Appellee lacked standing to maintain its forcible detainer action against Appellants?

2.02 Does the doctrine of collateral estoppel bar Appellee from bringing the present suit which involves the same parties, issues and subject matter previously litigated in three other forcible detainer actions?

## STATEMENT OF FACTS

3.01 On or about August 27, 1999, Appellants purchased the real property at 6508 Taylorcrest Drive, Austin, Travis County, Texas 78749 (the "Property"). They financed the purchase with a loan from National Mortgagelink I, Ltd. ("National Mortgagelink"), a Texas Limited Partnership (hereinafter "the Lender"), for $184,320.00, giving a 30 year fixed rate note ("the Note") to the Lender in return. As security for the note, Appellants executed a deed of trust in favor of the Lender.[6]

3.02 On July 7, 2006 the Office of the Texas Secretary of State notified National Mortgagelink that the entity's right to conduct affairs in the state of Texas had been

---

[6] (CR 74 - 80)

forfeited.[7] National Mortgagelink did not revive its right to transact business.

3.03　On November 8, 2006, the Secretary of State cancelled the right of the limited partnership to transact business.

3.04　Despite thus fading from existence, FNMA claims that at some point thereafter National Mortgagelink assigned the mortgage to Federal Deposit Insurance Corporation ("FDIC") as receiver for IndyMac Federal Bank, FSB, Successor to IndyMac Bank, FSB.

3.05　No such assignment was ever recorded as required under §192.007(a) of the Local Government Code.[8] In fact, FDIC instead filed an "Affidavit of Lost Assignment" in the property records of Travis County, Texas claiming that FDIC was the current mortgagee but admitting it could not produce any assignment, recorded or unrecorded, to prove that claim.[9] This "Affidavit of Lost Assignment" is a fictional device invented by FDIC and is wholly insufficient to establish an assignment of the mortgage.

3.06　On June 22, 2010, the same day the "Affidavit of Lost Assignment" was recorded, Bryan Bly, a notorious robo-signer at a document mill in Florida, allegedly

---

[7] (RR Vol.4, p. 33-34)
[8] Sec. **192.007**. Records of Releases and Other Actions.

> **(a)** To release, transfer, assign, or take another action relating to an instrument that is filed, registered, or recorded in the office of the county clerk, a person must file, register, or record another instrument relating to the action in the same manner as the original instrument was required to be filed, registered, or recorded.

[9] (RR Vol.4, p. 30)

acting on behalf of FDIC, recorded a "Corporate Assignment of Deed of Trust" assigning Appellants' mortgage to OneWest Bank, FSB ("OneWest Bank").[10]

3.07 On July 12, 2011 Hughes, Watters & Askanase recorded a "Notice of Substitute Trustee's Sale" on behalf of OneWest Bank setting the sale for August 2, 2011. Appellee FNMA claims to have acquired the Property at this foreclosure sale.

3.08 Ten days later, OneWest Bank recorded an "Appointment of Substitute Trustee" stating it appointed the substitute on February 8, 2010. Incredibly, this date is more than 4 months *before* OneWest claims to have acquired ownership of Appellants' mortgage. Thus, it is a void action for lack of authority.

3.09 On August 12, 2011, Hughes Watters & Askanase recorded a "Substitute Trustees Deed" in the official property records of Travis County.[11]

3.10 On August 24, 2011, Appellee filed a forcible detainer action against the Appellants (Cause No. 051621). The case was dismissed on appeal in County Court at Law No. 2, Travis County, Texas.

3.11 On or about August 2012, Appellee filed a **second** forcible detainer action against the Appellants (Cause No. 053364). On appeal in County Court at Law No. 2., the court granted Appellants' Plea to the Jurisdiction for lack of standing pursuant to Tex. Business Organizations Code § 153.309 and dismissed the suit.[12] On January

---

[10] (RR Vol.4, p. 28)
[11] (CR 130 – 133)
[12] (CR 177)

23, 2013, the Court denied Appellee's Motion for Reconsideration.[13]

3.12   On November 20, 2013, Appellee filed a **third** forcible detainer action against the Appellants (Cause No. 056393). The Appellants filed a motion to dismiss asserting that the Court has already ruled that Appellees lack standing to maintain the action and thus the doctrine of res judicata bars Appellee's request for relief. The court agreed with Appellant's motion to dismiss, dismissed the case and awarded sanctions and attorney's fees to the Appellants.[14]

3.13   On May 2, 2014, Appellee filed a **fourth** forcible detainer action against the Appellants (Cause No. 057256).[15] Appellants again filed a Plea to the Jurisdiction and Motion to Dismiss.[16] The court again found that Appellants' Plea to the Jurisdiction and Motion to Dismiss were meritorious and dismissed the case.[17]

3.14   On May 27, 2014, Appellee appealed the court's decision to the county court at law. A trial was held *de novo* on December 5, 2014 during which the trial court entered an Order dismissing Appellee's case <u>with prejudice</u> and awarding attorney's fees to the Appellants.[18]

3.15   Appellee filed a motion for new trial on December 18, 2014, which was

---

[13] (CR 178)
[14] (CR 182)
[15] (CR 63 - 83)
[16] (CR 34 – 50)
[17] (CR 18)
[18] (CR 117)

granted on January 12, 2015.[19]

3.16   The case proceeded to a second *de novo* trial and on May 29, 2015 Judge Eric M. Shepperd entered his Order awarding possession of the property to Appellee.[20] It is from this Order that the Haddoxes appeal.

## SUMMARY OF THE ARGUMENT

4.01   Appellee lacks standing to maintain the present action because 1) National Mortgagelink forfeited its right to transact business in Texas barring Appellee from filing suit in the state of Texas pursuant to Tex. Business Organizations Code § 153.309; and 2) National Mortgagelink, the original noteholder, never subsequently assigned the Note, as the right to litigate comes by assignment, Appellee does not have standing to sue Appellants.

4.02   Since the present case involves the same parties, issues and subject matter as the three previous forcible detainer cases, the doctrine of collateral estoppel bars the Appellant from bringing the present suit and the final judgment is void as a matter of law.

## ARGUMENT AND AUTHORITIES

### A.   Standard of Review

5.01   The court reviews *de novo* whether the lower court had subject-

___

[19] (CR 169)
[20] (CR 207-208)

matter jurisdiction and whether the Appellee has alleged facts that affirmatively demonstrate subject-matter jurisdiction. *Save Our Springs Alliance, Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 877 (Tex. App. Austin 2010). The court is not to consider the merits of Appellee's claims beyond the extent necessary to resolve the jurisdiction issue. *Id.*

5.02    In order for the court to uphold the County Court's ruling, it must find that the point of error alleged by Appellants is not meritorious.

> In a nonjury trial, when no findings of fact or conclusions of law are filed or properly requested, it is implied that the trial court made all the necessary findings to support its judgment. *Roberson v. Robinson*, 768 S.W.2d 280, 281, 32 Tex. Sup. Ct. J. 337 (Tex. 1989);*see Pharo v. Chambers Cty.*, 922 S.W.2d 945, 948, 39 Tex. Sup. Ct. J. 614 (Tex. 1996)(stating that, in a **bench trial** in which the trial court does not file findings of fact or conclusions of law, appellate courts presume the trial court made all findings in support of its judgment). Nevertheless, because a complete reporter's record is a part of the appellate record in this case, appellants may challenge both the legal and factual sufficiency of the trial court's findings. *See Roberson,* 768 S.W.2d at 281. We apply the same standards of review to these challenges as those applied in review of jury findings. *See id.*

*Mays v. Pierce*, 203 S.W.3d 564, 2006 Tex. App. LEXIS 8374 (Tex. App. Houston [14th Dist.] 2006).

**B. The County Court lacked jurisdiction to enter an Order because FNMA does not have standing.**

**1. Tex. Business Organizations Code §153.309 precludes FNMA from maintaining the present suit.**

5.03 FNMA, as a successor/assignee of National Mortgagelink, has no right to judgment in a Texas court, because FNMA lacks standing. "A judgment is void if it is apparent that the court rendering the judgment had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to render the judgment, or no capacity to act as a court." *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990).

5.04 "Subject-matter jurisdiction is essential to the authority of a court to decide a case, and standing is a component of subject-matter jurisdiction." *Save Our Springs Alliance, Inc.*, 304 S.W.3d 871 at 878. As an element of subject-matter jurisdiction, standing is an issue that can be raised at any time. *In re H.C.S.*, 219 S.W.3d 33, 34 (Tex. App. – San Antonio 2006, no pet.). Standing is a question of law for determination by the court. *Doncer v. Dickerson*, 81 S.W.3d 349, 358 (Tex. App. – El Paso 2002, no pet.). In determining whether FNMA had standing, the court must determine whether FNMA is allowed to bring the present lawsuit. *Id.*

5.05 When National Mortgagelink forfeited its right to transact business in Texas it rendered National Mortgagelink, and thus FNMA, incapable of maintaining a suit against the Appellants in the State of Texas. Appellee lacks standing pursuant to Tex. Business Organizations Code §153.309(a)(1) and (2). Tex. Business

Organizations Code §153.309 (a)(1) and (2), entitled "Effect of Forfeiture of Right to Transact Business," state:

> (a) Unless the right of the limited partnership to transact business is revived in accordance with Section 153.310:
>
> (1) the limited partnership may not maintain an action, suit, or proceeding in a court of this state; and
>
> (2) a successor or assignee of the limited partnership may not maintain an action, suit, or proceeding in a court of this state on a right, claim, or demand arising from the transaction of business by the limited partnership in this state.

5.06 In construing a statute the court's primary objective is to give effect to the Legislature's intent. *Tex. Lottery Comm'n v. First State Bank of Dequeen*, 325 S.W.3d 628, 635 (Tex. 2010). The legislature's intent is ascertained based on the plain meaning of the text. *Id.* It is presumed that "the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind." *Id.* The plain language in Tex. Business Organizations Code §153.309 (a)(1) and (2) clearly states that when a limited partnership forfeits its right to transact business in Texas neither it nor its successors/assignees may maintain an action or suit in a Texas court on a claim arising from business transacted in Texas.

5.07 It is an undisputed fact that the Texas Secretary of State terminated National Mortgagelink's right to transact business in Texas.[21] National Mortgagelink did not

---

[21] (RR Vol.4, p. 33-34)

revive its right to transact business in Texas. Therefore, neither National Mortgagelink nor FNMA, as a successor/assignee of National Mortgagelink, can maintain the present suit and any Order entered in this case granting relief to FNMA is void as a matter of law.

5.08 Appellee alleges that it has standing to maintain this suit pursuant to Tex. Business Organizations Code §9.251. §9.251 enumerates activities conducted by foreign entities that do not constitute as the "transaction of business" in Texas. In support of its argument Appellant relies, virtually exclusively, on an unpublished case from the United States District Court for the Western District of Texas[22][23]. However, pursuant to Texas Rule of Appellate Procedure 47.7, "unpublished opinions have no precedential value and must not be cited as authority by counsel or by a court." *Collins v. Ison-Newsome*, 73 S.W.3d 178, 180 (Tex. 2001). Furthermore, this is a federal case ergo it is not binding on this court. *Charleston v. Allen*, 420 S.W.3d 134, 137 n.6 (Tex. App.-Texarkana 2012, no pet. h.) ("[O]pinions of the federal circuits are not binding on state courts.").

5.09 Appellee's argument fails to acknowledge that chapter 9 of the Business Organization Code applies specifically, and only, to foreign entities. In fact the title of chapter 9 is "Foreign Entities." Furthermore, the very first sentence of §9.251 is:

---

[22] *Hofrock v. Federal National Mortgage Association*, No. A-13-CV-1013-LY.
[23] (RR Vol. 3, page 21, line 8-18) Due to a typographical error, the Reporter's Record spells "Hofrock" as "Hoffrau".

"**For purposes of this chapter**, activities that do not constitute transaction of business in this state include. . ." (emphasis added).

5.10 Although the Legislature expressly and unambiguously stated that §9.251 is to be applied only to foreign entities, the lower court erroneously applied the statute to National Mortgagelink, a domestic partnership. The court is required to "consider the statute as a whole." *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001). It cannot choose to apply an isolated provision in a statute and disregard the remaining language in the statute. *Id*.

5.11 Based on the language of the statutes, it is evident that the Legislature intended §9.251 to be applied to chapter 9 only and not to the entire Texas Business Organizations Code as Appellee contends.

5.12 National Mortgagelink is not a foreign entity. The definition of a foreign entity is "an organization formed under, and the internal affairs of which are governed by, the laws of a jurisdiction other than this state." Tex. Business Organizations Code § 1.002(28). The court is bound to construe the term "foreign entity" to mean what the Legislature defined it to mean. *Tex. Lottery Comm'n v. First State Bank of Dequeen*, 325 S.W.3d 628, 637 (Tex. 2010). National Mortgagelink was formed in Texas and the Partnership Agreement filed with the Texas Secretary of State by National Mortgagelink specifically states it is to be governed by the laws of the State of

Texas.[24]

5.13   Thus, chapter 9 of the Business Organization Code does not apply in this case and Appellee may not rely on the exceptions laid out in this chapter. On the other hand, Chapter 153 of the Texas Business Organization Code applies to limited partnerships.

5.14   The Legislature has chosen to draft two completely different and distinct chapters to distinguish from the statutes that apply to domestic limited partnerships and the statutes that apply to foreign entities. To interpret §9.251 in conjunction with §153.309 would result in conflicting law.

5.15   Therefore, it is clear that Business Organizations Code §9.251 does not apply.

5.16   The plain language in Tex. Business Organizations Code §153.309 precludes FNMA, as a successor/assignee of National Mortgagelink, from maintaining the present suit and any Order entered in this case granting relief to FNMA is void as a matter of law.

**2. FNMA has not plead sufficient facts to demonstrate standing to sue Appellants.**

5.17   Even if National Mortgagelink had not forfeited its right to transact business

---

[24] Appellants respectfully request this court take judicial notice of the Partnership Agreement attached hereto in Appendix 1. Pursuant to Tex. R. Evid. 301(b), "[a]n appellate court may take judicial notice of a relevant fact that is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Freedom Communs., Inc. v. Coronado*, 372 S.W.3d 621, 623 (Tex. 2012) (citations omitted). "Judicial notice of such a fact is mandatory if a party requests it and supplies the necessary information." *Id* (citations omitted).

in Texas, FNMA would still lack standing to pursue the present suit because FNMA has not plead sufficient facts to demonstrate that it in fact has any interest in the Property or that there is any relationship between FNMA and the Haddoxes, landlord/tenant or otherwise.

5.18 The "[s]tanding doctrine focuses on whether a party has a sufficient relationship with the lawsuit so as to have a justiciable interest in the outcome." *HSBC Bank USA, N.A. v. Watson*, 377 S.W.3d 766, 773 (Tex. App.—Dallas 2012, pet. dism'd). An assignee has standing to assert only those causes of actions previously belonging to its assignor. *Id.* Absolutely no evidence exists to establish that National Mortgagelink assigned its rights under the Note to FDIC or any other subsequent entity. Therefore, no such right was conferred to FNMA, there is no relationship between FNMA and the Haddoxes and FNMA has no interest in this forcible detainer suit.

5.19 FNMA alleges that the Note and Deed of Trust were assigned by National Mortgagelink to FDIC, but fails to produce any evidence to support its assertion. There is no assignment filed in the Travis County public records as required under §192.007(a) of the Local Government Code[25] and Appellee has never produced an

---

[25] Sec. **192.007**. Records of Releases and Other Actions.

> **(a)** To release, transfer, assign, or take another action relating to an instrument that is filed, registered, or recorded in the office of the county clerk, a person must file, register, or record another instrument relating to the action in the same manner as the original instrument was required to be filed, registered, or recorded.

assignment. The only evidence proffered by Appellee is an "Affidavit of Lost Assignment".[26] This "Affidavit of Lost Assignment" was fabricated by FDIC and is wholly insufficient to establish an assignment of the mortgage. The only actual purpose the "Affidavit of Lost Assignment" may serve is as a judicial admission by FDIC that no assignment exists. Therefore, FDIC had no rights or interest under the Note or Deed of Trust to convey to Onewest Bank making it impossible for Onewest Bank to assign any rights to FNMA.

5.20  FNMA is without authority to sue Appellants under the Note and FNMA has not plead sufficient facts to demonstrate standing to sue Appellants. Thus, the evidence is legally and factually insufficient to support the County Court's judgment.

**C. The doctrine of collateral estoppel bars FNMA from bringing the present forcible detainer action against the Appellants.**

5.21  Although Texas does not give *res judicata* effect to forcible detainer judgments, the doctrine of collateral estoppel still applies. Collateral estoppel is narrower than *res judicata*. *Bonniwell v. Beech Aircraft Corp*., 663 S.W.2d 816, 818 (Tex. 1984). "It is frequently characterized as issue preclusion because it bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same

---

[26] (RR Vol.4, p. 30)

cause of action." *Id.*

5.22 Where it involves the same parties, issues and subject matter, prior judgment is treated as an absolute bar to retrial of claims pertaining to the same cause of action. *Id*.

5.23 This lawsuit, like the three previous forcible detainer actions, involve the same parties, the same piece of real property, and the same issues. Therefore, the doctrine of collateral estoppel bars Appellee from bringing the present suit.

## PRAYER

Appellants Gerald R. Haddox and Sharon Haddox respectfully request that this Court reverse the judgment of the County Court at Law in all things and remand for further action consistent with its opinion.

Respectfully submitted,

*/s/ William B. Gammon*
WILLIAM B. GAMMON, SBN: 07611280
KARLA HUERTAS, SBN: 24087765
**GAMMON LAW OFFICE, PLLC.**
1201 Spyglass Drive, Suite 100
Austin, Texas 78746
Phone: 512-444-4529
Fax: 512-545-4279
Firm@GammonLawOffice.com
COUNSEL FOR APPELLANTS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served via this court's ECF system on this 3rd day of December, 2015 to the individuals listed below:

Sarah S. Robbins, SBN: 24074966
Hughes, Watters & Askanase, LLP
333 Clay, 29th Floor
Houston, Texas 77002
Telephone: 713.759.0818
Facsimile: 713.759.6834
ssr@hwallp.com

By:_ */s/ William B. Gammon*
WILLIAM B. GAMMON, SBN: 07611280

## CERTIFICATE OF COMPLIANCE

In accordance with Texa Rule of Appellate Procedure 9.4(i) I hereby certify that the foregoing Appellant's Brief contains 2,241 words.

By: */s/ William B. Gammon*
WILLIAM B. GAMMON, SBN: 07611280

No. 03-15-00350-CV

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

**GERALD R. HADDOX and SHARON HADDOX**
*Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
*Appellees.*

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. C-1-CV-14-005024

## APPENDIX

| Item 1 | Judgment of the Trial Court | CR 207-208 |
| Item 2 | Order of the Justice Court | CR 18 |
| Item 3 | Gerald R. Haddox's Original Answer | CR 34 – 50 |
| Item 4 | Complaint for Forcible Detainer | CR 63 - 83 |
| Item 5 | Deed of Trust | CR 74 – 80 |
| Item 6 | Order of the County Court | CR 117 |
| Item 7 | Substitute Trustee's Deed | CR 130 – 133 |

Item 8       Order for new trial                       CR 169

Item 9       Order on plea to the jurisdiction         CR 177

Item 10      Order on motion for reconsideration       CR 178

Item 11      Order of the Justice Court                CR 182

Item 12      Corporate Assignment                      RR Vol.4, p. 28

Item 13      Affidavit of Lost Assignment              RR Vol.4, p. 30

Item 14      Notice of Forfeited Rights                RR Vol.4, p. 33-34

Item 15      Certificate of Limited Partnership

**No. 03-15-00350-CV**

---

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

---

**GERALD R. HADDOX and SHARON HADDOX**
*Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
*Appellees.*

---

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. C-1-CV-14-005024

---

**APPENDIX ITEM 1**

---

Judgment of the Trial Court                                   CR 207-208

Cause No. C-1-CV-14-005024

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION | § | IN THE COUNTY COURT |
| Plaintiff | § | |
| | § | |
| v. | § | AT LAW NO. 2 |
| | § | |
| GERALD R. HADDOX AND SHARON HADDOX AND ALL OTHER OCCUPANTS | § | |
| Defendants | § | TRAVIS COUNTY, T E X A S |

## JUDGMENT

This March 8, 2015, came on to be heard the above entitled and numbered cause herein FEDERAL NATIONAL MORTGAGE ASSOCIATION, is Plaintiff, GERALD R. HADDOX AND SHARON HADDOX AND ALL OTHER OCCUPANTS are Defendants; when came the Plaintiff appeared and announced ready for trial. Defendants did appear. The Court, after considering the pleadings and fully hearing the sworn evidence finds for the Plaintiff.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the Defendants are adjudged guilty of forcible detainer and that the Plaintiff, FEDERAL NATIONAL MORTGAGE ASSOCIATION does have and recover of the Defendants GERALD R. HADDOX AND SHARON HADDOX AND ALL OTHER OCCUPANTS, possession of the following described premises situated in the Justice of the Peace Court, Precinct 3, Place 1, Travis County, Texas, to wit: 6508 Taylorcrest Drive, Austin, Texas 78749 more particularly described as LOT 12, BLOCK 19, OF THE VILLAGE AT WESTERN OAKS SECTION 16-C, A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT, OF RECORD IN VOLUME 100, PAGE 354-357, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS;

2809022:1 FA1WB-0209



Case # C-1-CV-14-005024

207

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that a Writ of Possession issue on or after the tenth day after entry of this judgment, to the proper officer commanding him to seize possession of the said described premises and deliver same to the Plaintiff and that an execution issue for removal of all personal property left and/or abandoned by Defendants remaining on the property.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the appeal bond is hereby set at _1000 a month glued to registery the court by the 5th of every month_ This judgment is final, disposes of all claims and parties, and is appealable.

Entered this _29th_ day of _May_, 2015.

THE HONORABLE PRESIDING JUDGE
COUNTY COURT AT LAW NO. 2

APPROVED & ENTRY REQUESTED:

HUGHES, WATTERS & ASKANASE, L.L.P

| | |
|---|---|
| Carolyn A. Taylor | TBA #08526800 |
| Sarah S. Robbins | TBA #24074966 |
| Dominique M. Varner | TBA #00791182 |
| Pascal Arteaga | TBA #24064838 |

Three Allen Center
333 Clay, 29th floor
Houston, Texas 77002
Telephone (713) 759-0818
Telecopier (713) 759-6834
ATTORNEYS FOR PLAINTIFF

2320235:1 FA1 WB-0209

208

**No. 03-15-00350-CV**

---

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

---

**GERALD R. HADDOX and SHARON HADDOX**
*Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
*Appellees.*

---

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. C-1-CV-14-005024

---

**APPENDIX ITEM 2**

---

Order of the Justice Court                     CR 18

**CAUSE NO J3-CV-14-057256**

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGATE ASSOCIATION | § § § | IN THE JUSTICE COURT |
| Plaintiff | § | |
| v. | § | PRECINCT THREE |
| | § § | |
| GERALD R. HADDOX AND SHARON HADDOX AND ALL OTHER OCCUPANTS | § § § | |
| Defendants | § § § | TRAVIS COUNTY, TEXAS |

## ORDER

On this the 22nd Day of May, 2014, came on to be heard Plaintiff's *Complaint for Forcible Detainer and Original Petition* and Defendants' *Original Answer, Plea to the Jurisdiction and Motion to Dismiss* filed herein. Plaintiff appeared through counsel and announced ready to proceed. Defendants appeared through counsel and announced ready to proceed. It is apparent from the evidence and argument of counsel and the law presented to the Court that Defendants' Plea to the Jurisdiction and Motion to Dismiss are meritorious and should be granted.

IT IS THEREFORE ORDERED that this case is hereby dismissed.

IT IS FURTHER ORDERED that Attorney's fees in the amount of $ 1,800 are awarded against Plaintiff, and in favor of Defendants for the use and benefit of Defendants' attorneys. These fees are to be paid directly to Plaintiffs' attorney no later than the 5 day of June, 2014.

SIGNED on this the 21st day of May, 2014.

*Susan Steeg*
Judge Presiding

---

FEDERAL NATIONAL MORTGAGE ASSOCIATION V. HADDOX, ET AL.
ORDER

18

**No. 03-15-00350-CV**

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

**GERALD R. HADDOX and SHARON HADDOX**
*Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
*Appellees.*

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. C-1-CV-14-005024

**APPENDIX ITEM 3**

Gerald R. Haddox's Original Answer          CR 34 – 50

# CAUSE NO J3-CV-14-057256

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGATE | § | IN THE JUSTICE COURT |
| ASSOCIATION | § | |
| Plaintiff | § | |
| v. | § | PRECINCT THREE |
| | § | |
| | § | |
| GERALD R. HADDOX AND SHARON | § | |
| HADDOX AND ALL OTHER OCCUPANTS | § | |
| | § | |
| Defendants | § | TRAVIS COUNTY, TEXAS |

## GERALD R. HADDOX'S ORIGINAL ANSWER & PLEA TO THE JURISDICTION

TO THE HONORABLE JUDGE OF SAID COURT:

**COME NOW** Defendants, GERALD R. HADDOX and SHARON HADDOX, by and through their attorneys of record, GAMMON LAW OFFICE, PLLC, and file this Original Answer and Plea to the Jurisdiction, and in support thereof would respectfully show this Honorable Court as follows:

## I. PLEA TO JURISDICTION

1. Defendants once again make this Plea to the Jurisdiction, objecting to this Court's jurisdiction over the claims asserted by Plaintiff against Defendant. Plaintiff does not have standing to assert the claims made against Defendant. A plea to the jurisdiction is proper to challenge a party's lack of standing. *M.D. Anderson Cancer Center v. Novak*, 52 S.W.3d 704, 710-711 (Tex. 2001).

2. Defendants have been prosecuted entirely without authority to do so and that any orders entered in this court are void for lack of jurisdiction. Plaintiff, FEDERAL NATIONAL MORTGAGE ASSOCIATION, hereinafter ("FNMA"), as a successor of National Mortgagelink I, Ltd., lacks standing to maintain this action.

3. On August 27, 1999, Defendant, granted a security interest in the real property at 6508

Taylorcrest Drive, Austin, TX 78749, hereinafter the ("Property") to National Mortgagelink I, Ltd. that was recorded in the real property records of Travis County, Texas under document #1999098156. On July 7, 2006, the Office of the Secretary of State noticed National Mortgagelink I, Ltd., L.P. that the limited partnership's right to conduct affairs had been forfeited. National Mortgagelink I, Ltd. did not revive its right to transact business.

4. On November 8, 2006, the Secretary of State involuntarily cancelled the right of the limited partnership to transact business. On June 22, 2010, Bryan Bly, allegedly acting on behalf of Federal Deposit Insurance Corporation as Receiver for IndyMac Federal Bank, FSB, Successor to IndyMac Bank, FSB filed an Assignment of Deed of Trust in the Travis County Clerk's records naming OneWest Bank, FSB, as successor and assignee of Plaintiff's home loan.

5. Any Order entered in this case granting relief to FNMA would be void as FNMA, a successor to National Mortgagelink I, Ltd. has no right to a judgment in a Texas court. "A judgment is void if it is apparent that the court rendering the judgment had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to render the judgment, or no capacity to act as a court." *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990). The court lacks jurisdiction to enter an order pursuant to Texas Business Organizations Code §153.309(a)(1) and (2). OneWest, as a successor/assignee of National Mortgagelink I, Ltd. could not maintain suit under Texas Business Organizations Code and any Order entered herein would be void as a matter of law. This suit should be dismissed as a result of Plaintiff's lack of standing to sue Defendant. As an element of subject-matter jurisdiction, standing is an issue that can be raised at any time. *In re H.C.S.*, 219 S.W.3d 33,34 (Tex.

35

App. – San Antonio 2006, no pet.). Standing is a question of law for determination by the court. *Doncer v. Dickerson*, 81 S.W.3d 349, 358 (Tex. App. – El Paso 2002, no pet.).

## II. GENERAL DENIAL

6. Defendants deny each and every allegation of Plaintiff's Original Petition and demands strict proof thereof as required by the Texas Rules of Civil Procedure.

## III. AFFIRMATIVE DEFENSE

7. Defendants, still urging and relying on the matters alleged above, alleges by way of affirmative defense that Plaintiff's suit is barred by the two-year statute of limitations for forcible detainer actions. TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). Plaintiff acquired a fraudulent substitute trustee's deed for the Property on or about August 2, 2011. Plaintiff has been attempting to unlawfully evict Defendants for almost three years.

## III. ATTORNE'S FEES, EXPENSES, COSTS, AND INTEREST

8. It was necessary for Defendants to secure the services of GAMMON LAW OFFICE, PLLC, licensed attorneys, to prepare and litigate this duplicative and groundless suit in connection with this forcible detainer action. Defendants hereby request the court award attorney's fees, expenses, and costs through trial and appeal. Attorney's fees in the amount of $1,800.00 should be granted against FNMA and in favor of Defendants for the use and benefit of Defendants' attorneys and be ordered paid directly to Defendants' attorneys who may enforce the judgment in Defendants' name.

## PRAYER

9. WHEREFORE, Defendants respectfully request that Plaintiff takes nothing by reason of Plaintiff's suit against Defendants. Further, Defendants request that this Court dismiss this action, and that Defendants recover attorneys' fees and all costs together with such other

36

and further relief to which Defendants may be justly entitled.

Respectfully submitted,

**GAMMON LAW OFFICE, PLLC**

E. Jason Billick, SBN: 24078230
William B. Gammon, SBN: 07611280
1201 Spyglass Drive, Ste. 100
Austin, Texas 78746
Phone: (512) 472-8909
Fax: (888) 545-4279
Firm@GammonLawOffice.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on the 20th day of May, 2014.

Sarah S. Robbins
Dominique M. Varner
HUGHES, WATERS & ASKANASE, L.L.P.
Three Allen Center
333 Clay, 29th Floor
Houston, Texas 77002
Phone: 713.759.0818
Fax:    713.759.6834
**VIA FACSIMILE**

E. Jason Billick

37

## CAUSE NO J3-CV-14-057256

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGATE ASSOCIATION | § § § | IN THE JUSTICE COURT |
| Plaintiff | § | |
| v. | § | PRECINCT THREE |
| | § § | |
| | § | |
| GERALD R. HADDOX AND SHARON HADOX AND ALL OTHER OCCUPANTS | § § § | |
| | § | |
| Defendants | § | TRAVIS COUNTY, TEXAS |

## DEFENDANTS' MOTION TO DISMISS AND MOTION FOR SANCTIONS

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW** Defendant, GERALD R. HADDOX, by and through his attorneys of record, GAMMON LAW OFFICE, PLLC, and files his Original Answer and Motion to Dismiss, and in support thereof would respectfully show this Honorable Court as follows:

## I. RELEVANT FACTS

1. On or about August 2012, Plaintiff filed its second forcible detainer action against Defendants (Cause No. 053364) seeking possession of the Property, commonly known as 6508 Taylorcrest Drive, Austin, TX 78749, hereinafter the ("Property"). Said action was ultimately dismissed on appeal in County Court at Law No. 2, Travis County Texas, finding that Plaintiff lacked standing to bring this action against Defendants, attached hereto as Exhibit A. Plaintiff filed a Motion for Reconsideration that was denied on January 23, 2013, attached hereto as Exhibit B. Plaintiff appealed that decision, but ultimately chose to dismiss the appeal, attached hereto as Exhibit C.

2. On November 20, 2013, Plaintiff filed a third forcible detainer action against Defendants (Cause No. 056393) in another futile attempt to seek possession of the Property. This Court dismissed the matter and awarded attorney fees in the amount of $750.00 against Plaintiff

to be paid by February 28, 2014. To date, Plaintiff has yet to pay the court-ordered fee. A copy of the Order is attached hereto as Exhibit D. Plaintiff subsequently appealed the decision but a filing fee was never submitted. The appeal was ultimately remanded back to this Court. A copy of the Remand Notice is attached hereto as Exhibit E.

## II. MOTION TO DISMISS

3. This lawsuit, like the three previous forcible detainer actions Plaintiff has filed against Defendants, involve the same parties, the same piece of real property and the same issues. In each case before this one, Plaintiff was found to lack standing. Although Texas does not give res judicata effect to forcible detainer judgments, Plaintiff's current lawsuit is groundless. See TEX. PROP. CODE ANN § 24.008. As explained in Defendants' Original Answer and Plea to the Jurisdiction, there is nothing Plaintiff can do to cure the fact that it lacks standing to evict.

4. Furthermore, the two-year statute of limitations period for Plaintiff to bring its forcible detainer action against Defendants has passed. See Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a) ("A person must bring suit for trespass for injury to the estate or to the property of another, conversion of personal property, taking or detaining the personal property of another, personal injury, forcible entry and detainer, and *forcible detainer* not later than two years after the day the cause of action accrues.") (emphasis added). Plaintiff has been attempting to evict Defendants since early 2011. Therefore, it's been almost three years since the cause of action accrued. Plaintiff has had three bites at the apple. In the interest of fairness and justice, Plaintiff should be barred from bringing the same lawsuit repeatedly after knowing it was told it had no standing to do so.

## III. MOTION FOR SANCTIONS AND ATTORNEY FEES

5. Defendants ask the Court to impose the following sanctions on Plaintiff and its attorneys of record. This lawsuit has been dismissed twice on the fact that this Court and the County Court of Law in Travis County, Texas, both found that Plaintiff lacks standing to bring this forcible detainer action against Defendants. This lawsuit is groundless and being brought against Defendants for the sole purpose to harass them.

6. Pursuant to TEX. R. CIV. PROC. 510.8(C), Defendants request the court award attorney's fees, expenses, and costs through trial and appeal. Attorney's fees in the amount of $1,800.00, in addition to the $750 already owed, should be granted against Plaintiff and in favor of Defendants for the use and benefit of Defendants' attorneys and be ordered paid directly to Defendants' attorneys who may enforce the judgment in Defendants' own name. See attached Attorney Fee Affidavit as Exhibit F.

7. Furthermore, Defendants ask for a penalty to paid into the Court registry against Plaintiff and its attorneys pursuant to TEX. CIV. PRAC. & REM. CODE §10.004(c)(2).[1] The sanctions requested have a direct relationship to the offensive conduct and is not excessive. *See Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006); *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003). Defendants request additional attorney's fees in the amount of $6,000.00, an amount equal to the total attorney fees accumulated thus far in defending all four of Plaintiffs' forcible detainer actions.

### PRAYER

8. WHEREFORE, Defendants respectfully request that this Court dismiss this action with

---

[1] Tex. Civ. Prac. & Rem. Code §10.004(c)(2) (....to pay to the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees.)

prejudice, grant their motion for sanctions and that Defendant recover attorneys' fees and all costs together with such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

**GAMMON LAW OFFICE, PLLC**

E. Jason Billick, SBN: 24078230
William B. Gammon, SBN: 07611280
1201 Spyglass Drive, Ste. 100
Austin, Texas 78746
Phone: (512) 472-8909
Fax: (888) 545-4279
Firm@GammonLawOffice.com

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on the 20th day of May, 2014.

Sarah S. Robbins
Dominique M. Varner
HUGHES, WATERS & ASKANASE, L.L.P.
Three Allen Center
333 Clay, 29th Floor
Houston, Texas 77002
Phone: 713.759.0818
Fax:   713.759.6834
**VIA FACSIMILE**

E. Jason Billick

41

No. C-1-CV-12-009316

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE | § | IN THE COUNTY COURT |
| ASSOCIATION | § | |
| | § | |
| v. | § | |
| | § | AT LAW NO. 2 |
| GERALD R. HADDOX and | § | |
| ALL OCCUPANTS OF | § | |
| 6508 Taylorcrest Drive | § | |
| Austin, Texas 78749 | § | TRAVIS COUNTY, TEXAS |

## ORDER
## ON DEFENDANTS' PLEA TO THE JURISICTION

Before the Court is the Plea to the Jurisdiction filed by Defendant Gerald Haddox.

After having considered the pleadings on file, arguments of counsel, and Defendant's

Plea, the Court is of the opinion that Defendants' Plea to the Jurisdiction is

MERITORIOUS.

THEREFORE, Defendants' Plea to the Jurisdiction is GRANTED, and it is hereby

ORDERED that:

~~All previous Orders entered in this case are withdrawn.~~ This suit is DISMISSED and

Plaintiff shall take nothing by way of this action.

SIGNED this __17__ day of ~~November~~ December, 2012.

_____
Judge Presiding

*Plea to the Jurisdiction*                                                p. 5

EXHIBIT
A

42

Cause No. C-1-CV-12-009316

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION | § § § | IN THE COUNTY COURT |
| _Plaintiff_ | § | |
| | § | |
| v. | § | AT LAW NO. 2 |
| | § | |
| GERALD R. HADDOX AND SHARON HADDOX | § § | |
| AND ALL OTHER OCCUPANTS | § | |
| _Defendants_ | § | TRAVIS COUNTY, T E X A S |

## ORDER

Came on for consideration Plaintiff's Motion for Reconsideration or, Alternatively, Rehearing, and the Court finds that it is well taken. It is therefore

ORDERED that the Plaintiff's Motion for Reconsideration or, Alternatively, Rehearing, on the eviction appeal is ~~GRANTED~~ _Denied_. It is further,

~~ORDERED that the hearing on the Plaintiff's Motion for Reconsideration or, Alternatively, Rehearing, of the eviction appeal is set for _____, 2012.~~

SIGNED this 23 day of _January_, 2013

_____
JUDGE PRESIDING

ENTRY REQUESTED:

HUGHES, WATTERS & ASKANASE, L.L.P.

_____
Sarah S. Robbins
TBN: 24074966
Three Allen Center
333 Clay 29th Floor
Houston, Texas 77002
(713) 759-0818
(713) 759-6834 FAX
Attorney for Plaintiff
Federal National Mortgage Association

2533178:1 FA1WB-0209

2013 JAN 23 PM 2:30
DANA DEBEAUVOIR
COUNTY CLERK
TRAVIS COUNTY, TEXAS


EXHIBIT B

43

Date:          July 2, 2013

Case Number:   03-13-00125-CV
Trial Court No.: C-1-CV-12-009316

Style:         Federal National Mortgage Association v. Gerald R. Haddox and Sharon
Haddox, and All Other Occupants

---

You are hereby notified that the appellant's motion to dismiss was granted on the date noted
above. Also, the enclosed opinion and judgment were sent this date to the following persons:

The Honorable J. David Phillips
Judge, County Court at Law No. 1
Travis County Courthouse
P. O. Box 1748
Austin, TX 78767

The Honorable Dana DeBeauvoir
Civil/Probate Division
Travis County Clerk's Office
P. O. Box 149325
Austin, TX 78714

Mr. William B. Gammon
Gammon Law Office, P.L.L.C.
1201 Spyglass Drive, Suite 100
Austin, TX 78746

Ms. Sarah S. Robbins
Hughes, Watters & Askanase, L.L.P.
Three Allen Center
333 Clay, 29th floor
Houston, TX 77002



44

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## JUDGMENT RENDERED JULY 2, 2013

## NO. 03-13-00125-CV

Federal National Mortgage Association, Appellant

v.

Gerald R. Haddox and Sharon Haddox, and All Other Occupants, Appellees

---

**APPEAL FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
BEFORE CHIEF JUSTICE JONES, JUSTICES PEMBERTON AND FIELD
DISMISSED ON APPELLANT'S MOTION -- OPINION BY CHIEF JUSTICE JONES**

---

**THIS DAY** came on to be submitted to this Court appellant's motion to dismiss the appeal in the above cause, and the Court having fully considered said motion, and being of the opinion that same should be granted: **IT IS THEREFORE** considered, adjudged and ordered that said motion is granted, and that the appeal is dismissed. It is **FURTHER** ordered that the appellant pay all costs relating to this appeal, both in this Court and the court below; and that this decision be certified below for observance.

45

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00125-CV

Federal National Mortgage Association, Appellant

v.

Gerald R. Haddox and Sharon Haddox, and All Other Occupants, Appellees

---

### FROM THE COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-12-009316, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

---

## MEMORANDUM OPINION

Appellant Federal National Mortgage Association has filed an unopposed motion to dismiss stating that it no longer wishes to pursue this appeal. We grant the motion and dismiss the appeal. *See* Tex. R. App. P. 42.1(a)(1).

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Field

Dismissed on Appellant's Motion

Filed: July 2, 2013

46

CAUSE NO JC-CV-13-056393

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGATE ASSOCIATION | § | IN THE JUSTICE COURT |
| | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v | § | PRECINCT THREE |
| | § | |
| GERALD R. HADDOX AND SHARON HADOXAND ALL OTHER OCCUPANTS | § | |
| | § | |
| Defendants | § | TRAVIS COUNTY, TEXAS |

## ORDER

On this the 9th day of December, came on to be heard Plaintiff's *Complaint for Forcible Detainer and Original Petition* and Defendant's *Gerald R. Haddox's Original Answer, Plea to the Jurisdiction and Motion to Dismiss* filed herein. Plaintiff appeared through counsel and announced ready to proceed. Defendant appeared through counsel and announced ready to proceed. It is apparent from the evidence and argument of counsel and the law presented to the Court that Defendant's Motion to Dismiss is meritorious and should be granted.

IT IS THEREFORE ORDERED that this case is hereby dismissed.

IT IS FURTHER ORDERED that Attorney's fees in the amount of $ _750_ are awarded against Plaintiff, and in favor of Defendant for the use and benefit of GERALD R. HADDOX's attorneys. These fees are to be paid directly to GERALD R. HADDOX's attorneys no later than _February 28_ , _2014_.

SIGNED on this the _13_ day of _January_ , _2014_.

_Susan Steeg_
Judge Presiding



47

# REMAND NOTICE

DANA DEBEAUVOIR
COUNTY CLERK
P.O. BOX 149325 AUSTIN, TEXAS 78714
1000 Guadalupe, Austin, TX 78701

To: **SARAH S. ROBBINS**
**333 CLAY, 29TH FLOOR**
**THREE ALLEN CENTER**
**HOUSTON, TX 77002**

Re: **FEDERAL NATIONAL MORTGAGE ASSOCIATION V GERALD R. HADDOX AND SHARON HADDOX AND ALL OTHER OCCUPANTS**

In accordance with the provisions of Rule 143a of the Texas Rules of Civil Procedure, you are hereby notified that in Cause No. **C-1-CV-14-000615** in the **COUNTY COURT AT LAW #2**, Travis County, Texas, payment of the required filing fee was not received within twenty (20) days of the notice to the appellant that such payment was due, and that the case has been remanded to the Justice of the Peace Court from which it had been appealed.

**Issued on April 04, 2014.**

DANA DEBEAUVOIR

By Deputy: C. JONES

cc: WILLIAM B. GAMMON
1201 SPYGLASS DRIVE, SUITE 100
AUSTIN, TX 78746

C-1-CV-14-000615
29C - 000000224



48

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGATE ASSOCIATION | § § § | IN THE JUSTICE COURT |
| Plaintiff | § | |
| v. | § | PRECINCT THREE |
| | § § | |
| GERALD R. HADDOX AND SHARON HADOX AND ALL OTHER OCCUPANTS | § § § § | |
| Defendants | § | TRAVIS COUNTY, TEXAS |

## AFFIDAVIT OF E. JASON BILLICK IN SUPPORT OF ATTORNEY FEES

BEFORE ME, the undersigned authority, personally appeared E. Jason Billick, who being on his oath sworn, stated:

"My name is E. Jason Billick. I am over 18 years of age, of sound mind, and capable of making this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

"I am an associate attorney at the Gammon Law Office, PLLC, hereinafter ("Firm"). The Firm represents Gerald R. Haddox and Sharon Haddox in this matter.

"I have been licensed to practice law in Texas since 2011. I am also licensed in the Western District of Texas. I obtained my J.D. from Vermont Law School in 2011. My practice is civil litigation, with an emphasis on business, commercial and real estate litigation.

"I handle real estate litigation matters throughout Texas, including Travis County. In the course of my practice, I have had the occasion to examine fee requests from attorneys in several areas of the state. I am therefore familiar with the rates and charges for legal services in various counties in prosecuting and defending reasonable attorney's fees in Texas and other considerations necessary in determining reasonable and necessary attorneys' fees. I have read case law regarding attorney's fees in Texas.

"Specifically on this matter, I have undertaken the following tasks in anticipation of the May 22, 2014, forcible detainer action brought by Plaintiff: (1) Correspondence and telephone conference with client (30 minutes); (2) Legal research associated with res judicata and statute of limitations on forcible detainer actions (1 hour); (3) Prepared Answer, Plea in Abatement, Motion to Dismiss and Motion for Sanctions (2 hours); and (4) attend Plaintiff's forcible detainer

EXHIBIT
F

49

hearing (estimate 2.5 hours), for a total of six hours.

"As the lead associate attorney on this case, I am familiar with the work done on this matter. Based on my training, experience, the time and labor required, the novelty and complexity of the case, the skill required to perform the legal services properly, and the fee customarily charged in Travis County for similar legal services, it my opinion that the services provided by the Firm were reasonable and necessary at the time and place that the services were provided, and the rate of $300 per hour is reasonable for all attorney work on this motion. This rate is in light of the relative experience of the practicing attorney and the areas of law at issue in this case and for which services have been rendered.

"Further, I say nothing."

_____
E. Jason Billick, AFFIANT


Subscribed and sworn to before me, on this the 20th day of May 2014, the undersigned authority, to certify which witness my hand and official seal.

_____
Notary Public, State of Texas

CHARLOTTE SECORD
Notary Public, State of Texas
My Commission Expires
July 05, 2015

My commission expires

50

**No. 03-15-00350-CV**

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

**GERALD R. HADDOX and SHARON HADDOX**
*Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
*Appellees.*

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. C-1-CV-14-005024

**APPENDIX ITEM 4**

Complaint for Forcible Detainer                CR 63 - 83

Cause No. J3CV14-057256

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION | § § | JUSTICE OF THE PEACE COURT |
| Plaintiff | § § | |
| V. | § § | PRECINCT 3   POSITION 1 |
| GERALD R. HADDOX AND SHARON HADDOX AND ALL OTHER OCCUPANTS | § § § § | |
| Defendants | § | TRAVIS COUNTY, T E X A S |

## COMPLAINT FOR FORCIBLE DETAINER AND ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

FEDERAL NATIONAL MORTGAGE ASSOCIATION is plaintiff herein and complains that defendants Gerald R. Haddox and Sharon Haddox and ALL OTHER OCCUPANTS (together, "Defendants") are guilty of Forcible Detainer and are wrongfully in possession of the real property herein below described.

I.

Defendants reside in Travis County, Texas, and may be served with process where they reside at 6508 Taylorcrest Drive, Austin, Texas 78749. Plaintiff knows of no other mailing, home or work addresses for Defendants in Travis County, Texas.

II.

The subject Property is located and situated in Justice of the Peace Precinct 3 in Travis County, Texas. Therefore, the Justice Court has original and exclusive jurisdiction pursuant to Tex. Prop. Code §24.004 and Tex. R. Civ. P. Rule 510.

2809022:1 FA1WB-0209

63

III.

By Deed of Trust (the "Deed of Trust") attached hereto as Exhibit "A," bearing the signature of Gerald R. Haddox and Sharon Haddox and dated August 30, 1999, with power of sale to secure repayment of that certain Promissory Note (the "Note") in the original principal amount of $184,320.00, Gerald R. Haddox and Sharon Haddox conveyed in trust for the benefit of the holder and owner of the Note and Deed of Trust the following described property (the "Property"):

> LOT 12, BLOCK 19, OF THE VILLAGE AT WESTERN OAKS SECTION 16-C, A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT, OF RECORD IN VOLUME 100, PAGE 354-357, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS

IV.

As evidenced by trustee foreclosure deed, Plaintiff acquired the Property at a foreclosure sale on August 2, 2011. Pursuant to the terms of the Deed of Trust, Defendant, or any person holding possession of the Property through Defendant, became tenants at sufferance once the Property was sold at the foreclosure sale. Such persons are subject to removal by a writ of possession.

V.

Upon inspection of the Property, Plaintiff found Defendants were still in possession of the Property. On April 23, 2014, Plaintiff gave Defendants written notice to vacate pursuant to Section 24.001 *et seq.* of the Texas Property Code. The notices were served by Certified Mail, Return Receipt Requested, and U.S. First Class Mail, postage prepaid. The notices demanded that the Defendants vacate the Property within three (3) days after delivery of the notices. True and correct copies of the notice letters are attached hereto as Exhibits "B" and "C" respectively, and are incorporated herein. Despite such notice and demand, Defendants have failed and

2855142:1 FA1WB-0209

refused and continue to fail and refuse to vacate the Property. All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

VI.

**WHEREFORE**, Plaintiff requests that Defendants be cited to appear and answer, and that on final trial:

1. Defendants, jointly and severally, be adjudged guilty of Forcible Detainer;

2. Possession of the Property be awarded to Plaintiff; and

3. Plaintiff be granted such other and further relief to which it may be justly entitled.

Respectfully submitted,

HUGHES, WATTERS & ASKANASE, L.L.P.

By: _____

Sarah S. Robbins            TBA #24074966
Dominique M. Varner         TBA #00791182
Three Allen Center
333 Clay, 29th Floor
Houston, Texas 77002
Telephone (713) 759-0818
Telecopier (713) 759-6834
ssr@hwallp.com
dem@hwallp.com
Attorney in Charge for Plaintiff

2855142:1 FA1WB-0209

## VERIFICATION

**STATE OF TEXAS** §
§
**COUNTY OF HARRIS** §

BEFORE ME, the undersigned notary, on this day personally appeared Sarah S. Robbins, a person whose identity is known to me. After I administered an oath to her, upon his oath he said he read the foregoing complaint and that the facts stated in it are within his personal knowledge and true and correct.

_____
Sarah S. Robbins

SWORN TO AND SUBSCRIBED before me by Sarah S. Robbins on this _____ day of April, A.D. 2013.


ELAINE CRUZ
MY COMMISSION EXPIRES
June 15, 2015

_____
Notary Public, State of Texas
My commission expires:

Of Counsel:

HUGHES, WATTERS & ASKANASE, L.L.P
Three Allen Center
333 Clay, 29th Floor
Houston, Texas 77002
Telephone (713) 759-0818
Telecopier (713) 759-6834

2855142:1 FAIWB-0209

Cause No. _____

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION | § | JUSTICE OF THE PEACE COURT |
| | § | |
| Plaintiff | § | |
| | § | |
| V. | § | PRECINCT 3   POSITION 1 |
| | § | |
| GERALD R. HADDOX AND SHARON HADDOX | § | |
| AND ALL OTHER OCCUPANTS | § | |
| Defendants | § | TRAVIS COUNTY, T E X A S |

## CERTIFICATE OF LAST KNOWN ADDRESS

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Sarah S. Robbins, attorney of record for Plaintiff herein, who, after first being duly sworn, deposed and stated as follows:

"I, Sarah S. Robbins, attorney of record for Plaintiff herein, certify that the last known mailing address for Defendant, Gerald R. Haddox and Sharon Haddox, is at his place of residence: 6508 Taylorcrest Drive, Austin, Texas 78749."

_____
Sarah S. Robbins

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority, on this _____ day of April, A.D., 2013.

ELAINE CRUZ
MY COMMISSION EXPIRES
June 15, 2015

_____
Notary Public, State of Texas
My commission expires: _____

2809022:1 FA1WB-0209

67

Cause No. J3CV14 - 0572S4

| FEDERAL NATIONAL MORTGAGE ASSOCIATION | § | JUSTICE OF THE PEACE COURT |
|---|---|---|

FEDERAL NATIONAL MORTGAGE § JUSTICE OF THE PEACE COURT
ASSOCIATION §
§
　　　　　　　　Plaintiff §
§
V. § PRECINCT 3   POSITION 1
§
§
GERALD R. HADDOX AND SHARON §
HADDOX §
AND ALL OTHER OCCUPANTS §
　　　　　　　　Defendants § TRAVIS COUNTY, T E X A S

## PLAINTIFF'S SERVICEMEMBERS' AFFIDAVIT

THE STATE OF TEXAS　　　　　　§
　　　　　　　　　　　　　　　　§
COUNTY OF HARRIS　　　　　　　§

2014 MAY -2 PM 3:__  TRAVIS COUNTY J.P. PCT 3

BEFORE ME, the undersigned notary, on this day personally appeared Sarah S. Robbins, a person whose identity is known to me, and after administration of the oath, stated as follows:

"My name is Sarah S. Robbins. I am above the age of twenty-one (21) years, have never been convicted of a felony or a crime of moral turpitude and am competent to make this Affidavit. I am capable of making this affidavit. I understand that if I make or use a military status affidavit, knowing it to be false, I may be fined, imprisoned for not more than one year, or both. See 50 U.S.C. App. Section 521(c). The facts stated in this affidavit are within my personal knowledge and are true and correct."

X　　Defendant is not in the military. In support, offer the following facts to show Defendant is not in the military: Per the Department of Defense Manpower Data Center.

Plaintiff asks the court to appoint an attorney to represent the Defendant because:

Plaintiff is unable to determine if the Defendant is in the military. The Servicemembers' Civil Relieve Act of 1940, 50 U.S.C. app. Section 520(1), requires the trial court to appoint an attorney to represent Defendant before a judgment may be rendered against him/her.

Defendant is in the military. The Servicemembers' Civil Relief Act of 1940, 50 U.S.C. App. Section 520(1), requires the court to appoint an attorney to represent Defendant before a judgment may be rendered against him/her.

2809022:1 FA1WB-0209

68

I understand that costs for the attorney ad litem may be assessed against the Plaintiff as costs of court unless otherwise ordered by the court.

_____
Sarah S. Robbins

SWORN TO AND SUBSCRIBED before me by Sarah S. Robbins on this _____ day of April, A.D., 2013.

ELAINE CRUZ
MY COMMISSION EXPIRES
June 15, 2015

_____
Notary Public, State of Texas
My commission expires:

TRAVIS COUNTY
JP. PCT. 3
2013 MAY -2 PM 3:46

69



## Status Report
## Pursuant to Servicemembers Civil Relief Act

Last Name: <u>HADDOX</u>
First Name: <u>GERALD</u>
Middle Name: <u>R</u>
Active Duty Status As Of: <u>Apr-30-2014</u>

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the Individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

The Defense Manpower Data Center (DMDC, an organization of the Department of Defense (DoD) that .itains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL: http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

## Certificate ID: R9U5LA34C0DA110



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

Last Name: <u>HADDOX</u>
First Name: <u>SHARON</u>
Middle Name:
Active Duty Status As Of: <u>Apr-30-2014</u>

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Mary M. Snavely-Dixon*

Mary M. Snavely-Dixon, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Arlington, VA 22350

72

The Defense Manpower Data Center (DMDC, an organization of the Department of Defense (DoD) that tains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 501 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service via the "defenselink.mil" URL: http://www.defenselink.mil/faq/pis/PC09SLDR.html. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 521(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"
Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases
Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

## Certificate ID: S9UCCAD480D9F60



100053325SS

11  01-99050461-JSM-AVL

AFTER RECORDED RETURN TO:

INDYMAC MORTGAGE HOLDINGS, INC.
15050 AVENUE OF SCIENCE, SUITE 101
SAN DIEGO, CA 92128

THIS IS TO CERTIFY THAT THIS IS
A COPY OF THE ORIGINAL.

Steward Title Austin, Inc.

By

——— [Space Above This Line For Recording Data] ———

# DEED OF TRUST

Loan No. 511327

THIS DEED OF TRUST ("Security Instrument") is made on August 30, 1999. The grantor is SHARON HADDOX and spouse, GERALD R. HADDOX ("Borrower"). The trustee is EVERETT L. ANSCHUTZ, whose address is 2425 WEST LOOP SOUTH, SUITE 800 HOUSTON, TX 77027 ("Trustee"). The beneficiary is NATIONAL MORTGAGELINK, I LTD., which is organized and existing under the laws of THE STATE OF TEXAS, and whose address is 3934 FM 1960 WEST, SUITE 100, HOUSTON, TX 77068 ("Lender"). Borrower owes Lender the principal sum of One Hundred Eighty Four Thousand Three Hundred Twenty and no/100 Dollars (U.S. $184,320.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on September 1, 2029. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in TRAVIS County, Texas:

Lot 12, Block "19", of The Village At Western Oaks Section 16-C, a subdivision in Travis County, Texas, according to the map or plat, of record in Volume 100, Pages 354-357, of the Plat Records of Travis County, Texas

which has the address of 6508 TAYLORCREST DRIVE, AUSTIN, TX 78749 ("Property Address"):

TEXAS -- Single Family-- Fannie Mae/Freddie Mac Uniform Instrument
GREATLAND ■
ITEM 1968L1 (9401)
(Page 1 of 7 pages)

Form 3044 9/90
(RAA) edit.u

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain

75

priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.   Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6.   Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7.   Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8.   Mortgage Insurance. If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer

approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9.  Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10.  Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11.  Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.  Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13.  Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14.  Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its



option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustees deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all the sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold.pursuant to this paragraph 21, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. Substitute Trustee. Lender, at its option, and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

24. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

25. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

26. Waiver of Notice of Intention to Accelerate. Borrower waives the right to notice of intention to require immediate payment in full of all sums secured by this Security Instrument except as provided in paragraph 21.

27. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

[ ] Adjustable Rate Rider          [ ] Condominium Rider              [ ] 1-4 Family Rider

[ ] Graduated Payment Rider        [ ] Planned Unit Development Rider  [ ] Biweekly Payment Rider

[ ] Balloon Rider                  [ ] Rate Improvement Rider         [ ] Second Home Rider

[ ]

28. Purchase Money; Vendor's Lien; The note secured hereby is primarily secured by the Vendor's Lien retained in Deed of even date herewith conveying the property to borrower, which Vendor's Lien has been assigned to Lender, this Deed of Trust being additional security therefor.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 7 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)  
SHARON HADDOX                      -Borrower

_____ (Seal)  
GERALD R. HADDOX                   -Borrower

_____ (Seal)  
                                   -Borrower

_____ (Seal)  
                                   -Borrower

STATE OF TEXAS, __Travis__ County ss:

This instrument was acknowledged before me on __August 27__, __1999__, by SHARON HADDOX and spouse, GERALD R. HADDOX.

_____  
                          Notary Public

_____  
Printed Name of Notary Public

CAROLYN STEGALL  
Notary Public, State of Texas  
My Commission Expires  
JUNE 21, 2002

TEXAS -- Single Family-- Fannie Mae/Freddie Mac Uniform Instrument

GREATLAND ■  
(ITEM 1962L7 (9612))

(Page 7 of 7 pages)

Form 3044 9/90  
(RAA) rd2.14

TRAVIS COUNTY  
J.P. PCT. 3  
99 MAY -2 PM 3:47

80

 HughesWattersAskanase



EXHIBIT
**B**

## NOTICE TO VACATE PREMISES
## (NO MONETARY RECOVERY SOUGHT)
April 23, 2014

Gerald R. Haddox
6508 Taylorcrest Drive
Austin, Texas 78749

*Certified Mail Return Receipt No. 7196 9008 9111 2725 8567*
*and First Class Mail, Postage Prepaid*

Re: 6508 Taylorcrest Drive, Austin, Texas 78749, more particularly described as LOT 12, BLOCK 19, OF THE VILLAGE AT WESTERN OAKS SECTION 16-C, A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT, OF RECORD IN VOLUME 100, PAGE 354-357, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS ("Property").
FEDERAL NATIONAL MORTGAGE ASSOCIATION Loan Number 1000533255

Dear Gerald R. Haddox:

The undersigned represents FEDERAL NATIONAL MORTGAGE ASSOCIATION which acquired title to the Property at a non judicial foreclosure sale concluded on August 2, 2011.

Pursuant to Section 24.001 *et seq* of the Texas Property Code, notice is hereby given and demand is hereby made that you vacate the Property within three (3) days after delivery of this letter.
If you do not vacate the Property as demanded FEDERAL NATIONAL MORTGAGE ASSOCIATION has instructed that we institute a Forcible Detainer lawsuit against you to regain possession of the Property.

If you are presently on active duty in the Armed Services of the United States or have been discharged within one (1) year prior to the date of this letter, please submit evidence of such service by way of a letter from your Commanding Officer or a copy of your DD214 to this office immediately. You may have certain rights available to you under the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.).

We trust your timely compliance with these requests will avoid the necessity for further legal action.

If you have questions regarding this matter, do not hesitate to call me at (713) 759-0818.

Very truly yours,

HUGHES, WATTERS & ASKANASE, L.L.P

SSR:emc

Hughes Watters Askanase LLP, Attorneys at Law
Three Allen Center, 333 Clay, 29th Floor :: Houston, TX 77002
PHONE 713 759 0818 :: FAX 713 759 6834 :: INTERNET www.hwa.com

2809022:1 FA1WB-0209

81

 HughesWattersAskanase



**EXHIBIT**

C

## NOTICE TO VACATE PREMISES
## (NO MONETARY RECOVERY SOUGHT)

April 23, 2014

Sharon Haddox
6508 Taylorcrest Drive
Austin, Texas 78749

*Certified Mail Return Receipt No. 7196 9008 9111 2725 8581*
*and First Class Mail, Postage Prepaid*

Re:   6508 Taylorcrest Drive, Austin, Texas 78749, more particularly described as LOT 12, BLOCK 19, OF THE VILLAGE AT WESTERN OAKS SECTION 16-C, A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT, OF RECORD IN VOLUME 100, PAGE 354-357, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS ("Property"). FEDERAL NATIONAL MORTGAGE ASSOCIATION Loan Number 1000533255

Dear Sharon Haddox:

The undersigned represents FEDERAL NATIONAL MORTGAGE ASSOCIATION which acquired title to the Property at a non judicial foreclosure sale concluded on August 2, 2011.

Pursuant to Section 24.001 *et seq* of the Texas Property Code, notice is hereby given and demand is hereby made that you vacate the Property within three (3) days after delivery of this letter.

If you do not vacate the Property as demanded FEDERAL NATIONAL MORTGAGE ASSOCIATION has instructed that we institute a Forcible Detainer lawsuit against you to regain possession of the Property.

If you are presently on active duty in the Armed Services of the United States or have been discharged within one (1) year prior to the date of this letter, please submit evidence of such service by way of a letter from your Commanding Officer or a copy of your DD214 to this office immediately. You may have certain rights available to you under the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.).

We trust your timely compliance with these requests will avoid the necessity for further legal action.

If you have questions regarding this matter, do not hesitate to call me at (713) 759-0818.

Very truly yours,

HUGHES, WATTERS & ASKANASE, L.L.P

SSR:emc

Hughes Watters Askanase LLP, Attorneys at Law
Three Allen Center, 333 Clay, 29th Floor :: Houston, TX 77002
PHONE 713 759 0818 :: FAX 713 759 6834 :: INTERNET www.hwa.com

2809022:1 FA1WB-0209

82

 HughesWattersAskanase



## NOTICE TO VACATE PREMISES
## (NO MONETARY RECOVERY SOUGHT)

April 23, 2014

ALL OTHER OCCUPANTS
6508 Taylorcrest Drive
Austin, Texas 78749

*Certified Mail Return Receipt No. 7196 9008 9111 2725 8574*
*and First Class Mail, Postage Prepaid*

Re:   6508 Taylorcrest Drive, Austin, Texas 78749, more particularly described as LOT 12, BLOCK 19, OF THE VILLAGE AT WESTERN OAKS SECTION 16-C, A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT, OF RECORD IN VOLUME 100, PAGE 354-357, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS ("Property"). FEDERAL NATIONAL MORTGAGE ASSOCIATION Loan Number 1000533255

Dear ALL OTHER OCCUPANTS:

The undersigned represents FEDERAL NATIONAL MORTGAGE ASSOCIATION which acquired title to the Property at a non judicial foreclosure sale concluded on August 2, 2011.

Pursuant to Section 24.001 *et seq* of the Texas Property Code, notice is hereby given and demand is hereby made that you vacate the Property within three (3) days after delivery of this letter.

If you do not vacate the Property as demanded FEDERAL NATIONAL MORTGAGE ASSOCIATION has instructed that we institute a Forcible Detainer lawsuit against you to regain possession of the Property.

If you are presently on active duty in the Armed Services of the United States or have been discharged within one (1) year prior to the date of this letter, please submit evidence of such service by way of a letter from your Commanding Officer or a copy of your DD214 to this office immediately. You may have certain rights available to you under the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.).

We trust your timely compliance with these requests will avoid the necessity for further legal action.

If you have questions regarding this matter, do not hesitate to call me at (713) 759-0818.

Very truly yours,

HUGHES, WATTERS & ASKANASE, L.L.P

SSR:emc

Hughes Watters Askanase LLP, Attorneys at Law
Three Allen Center, 333 Clay, 29th Floor :: Houston, TX 77002
PHONE 713 759 0818 :: FAX 713 759 6834 :: INTERNET www.hwa.com

2809022:1 FA1WB-0209

*83*

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

**GERALD R. HADDOX and SHARON HADDOX**
*Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
*Appellees.*

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. C-1-CV-14-005024

**APPENDIX ITEM 5**

Deed of Trust                                    CR 74 – 80



1000533255

THIS IS TO CERTIFY THAT THIS IS A COPY OF THE ORIGINAL.

By_____

JT__ 01-99050461-JSM-AVL

AFTER RECORDED RETURN TO:

INDYMAC MORTGAGE HOLDINGS, INC.
15050 AVENUE OF SCIENCE, SUITE 101
SAN DIEGO, CA 92128

---

[Space Above This Line For Recording Data]

# DEED OF TRUST

Loan No. 511327

THIS DEED OF TRUST ("Security Instrument") is made on August 30, 1999. The grantor is SHARON HADDOX and spouse, GERALD R. HADDOX ("Borrower"). The trustee is EVERETT L. ANSCHUTZ, whose address is 2425 WEST LOOP SOUTH, SUITE 800 HOUSTON, TX 77027 ("Trustee"). The beneficiary is NATIONAL MORTGAGELINK,I LTD., which is organized and existing under the laws of THE STATE OF TEXAS, and whose address is 3934 FM 1960 WEST, SUITE 100, HOUSTON, TX 77068 ("Lender"). Borrower owes Lender the principal sum of One Hundred Eighty Four Thousand Three Hundred Twenty and no/100 Dollars (U.S. $184,320.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on September 1, 2029. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in TRAVIS County, Texas:

Lot 12, Block "19", of The Village At Western Oaks Section 16-C, a subdivision in Travis County, Texas, according to the map or plat, of record in Volume 100, Pages 354-357, of the Plat Records of Travis County, Texas

which has the address of 6508 TAYLORCREST DRIVE, AUSTIN, TX 78749 ("Property Address"):

TEXAS -- Single Family-- Fannie Mac/Freddie Mac Uniform Instrument
GREATLAND ■
ITEM 1968L1 (9402)                                          (Page 1 of 7 pages)

Form 3044 9/00
(BAA) edu.ta

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain

TEXAS – Single Family-- Fannie Mae/Freddie Mac Uniform Instrument      Form 3044 9/90
GREATLAND ■      (BAA) cdu.in
ITEM 1905L1 (9401)      (Page 2 of 7 pages)

75

priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer

TEXAS -- Single Family-- Fannie Mac/Freddie Mac Uniform Instrument
GREATLAND ®
ITEM 1664L3 (9407)                    (Page 3 of 7 pages)

Form 3044 9/90
(R&A) 03/01

approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its



option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and recording the notice at least 21 days prior to sale as provided by applicable law. Lender shall mail a copy of the notice of sale to Borrower in the manner prescribed by applicable law. Sale shall be made at public vendue between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustees deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all the sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold.pursuant to this paragraph 21, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. Substitute Trustee. Lender, at its option, and with or without cause, may from time to time remove Trustee and appoint, by power of attorney or otherwise, a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

24. Subrogation. Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

25. Partial Invalidity. In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

26. Waiver of Notice of Intention to Accelerate. Borrower waives the right to notice of intention to require immediate payment in full of all sums secured by this Security Instrument except as provided in paragraph 21.

27. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

[ ] Adjustable Rate Rider        [ ] Condominium Rider               [ ] 1-4 Family Rider

[ ] Graduated Payment Rider      [ ] Planned Unit Development Rider   [ ] Biweekly Payment Rider

[ ] Balloon Rider                [ ] Rate Improvement Rider          [ ] Second Home Rider

[ ]

79

28. Purchase Money; Vendor's Lien; The note secured hereby is primarily secured by the Vendor's Lien retained in Deed of even date herewith conveying the property to borrower, which Vendor's Lien has been assigned to Lender, this Deed of Trust being additional security therefor.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 7 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)    _____ (Seal)
SHARON HADDOX                    -Borrower    GERALD R. HADDOX

_____ (Seal)    _____ (Seal)
                                 -Borrower                                  -Borrower

STATE OF TEXAS, __Travis__ County ss:

This instrument was acknowledged before me on ___August 27___, ___1999___, by SHARON HADDOX and spouse, GERALD R. HADDOX.

_____
Notary Public

CAROLYN STEGALL
Notary Public, State of Texas
My Commission Expires
JUNE 21, 2002

_____
Printed Name of Notary Public

80

No. 03-15-00350-CV

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

**GERALD R. HADDOX and SHARON HADDOX**
*Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
*Appellees.*

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. C-1-CV-14-005024

**APPENDIX ITEM 6**

Order of the County Court                    CR 117

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | § § | IN THE COUNTY COURT AT LAW |
| Plaintiff | § | |
| v. | § | NO. 1 |
| | § | |
| | § | |
| GERALD R. HADDOX AND SHARON HADDOX AND ALL OTHER OCCUPANTS, | § § | |
| | § | |
| Defendants | § § § | TRAVIS COUNTY, TEXAS |

## ORDER

On this the 5th day of December, 2014, came on to be heard Plaintiff's *Complaint for Forcible Detainer and Original Petition* and Defendants' *Original Answer, Plea to the Jurisdiction and Motion to Dismiss* filed herein. Plaintiff appeared through counsel and announced ready to proceed. Defendants appeared through counsel and announced ready to proceed. It is apparent from the evidence and argument of counsel and the law presented to the Court that Defendants' Plea to the Jurisdiction and Motion to Dismiss are meritorious and should be granted.

The Court finds Plaintiff lacks standing to bring this suit. Further, this Court finds that the two (2) year statute of limitations has passed barring Plaintiff from bringing suit.

IT IS THEREFORE ORDERED that this case is hereby dismissed with prejudice.

IT IS FURTHER ORDERED that Attorney's fees in the amount of $ _3000⁰⁰_ are awarded against Plaintiff, and in favor of Defendants for the use and benefit of Defendants' attorneys. These fees are to be paid directly to Defendants' attorney no later than the _31st_ day of _December_ 2014.

SIGNED on this the _5_ day of December, 2014.

_____
Judge Presiding

Case # C-1-CV-14-005024

117

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

**GERALD R. HADDOX and SHARON HADDOX**
*Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
*Appellees.*

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. C-1-CV-14-005024

**APPENDIX ITEM 7**

Substitute Trustee's Deed                    CR 130 – 133



## SUBSTITUTE TRUSTEE'S DEED

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

THE STATE OF TEXAS

COUNTY OF TRAVIS

KNOW ALL MEN BY THESE PRESENTS:

WHEREAS, by a certain Deed of Trust, dated August 30, 1999, recorded in the office of the County Clerk under File No. 1999098156, Travis County, Texas, SHARON HADDOX and spouse, GERALD R. HADDOX, Grantor(s), conveyed to EVERETT L. ANSCHUTZ, Trustee(s), certain property hereinafter described, for the purpose of securing and enforcing payment of a certain note described in said Deed of Trust, of even date therewith and in the original principal sum of $184,320.00;

WHEREAS, ONEWEST BANK, FSB, the holder of said Note and Deed of Trust, as authorized by and provided in said Deed of Trust, appointed the undersigned to serve as Substitute Trustee(s) and to enforce the trust, the said SHARON HADDOX and/or GERALD R. HADDOX, having made default in the payment of said note according to the terms, tenor and effect thereof; and

WHEREAS, I/we, JUANITA STRICKLAND or JANIE MUCHA or CAROLYN A. TAYLOR, as Substitute Trustee(s), did on the 2nd day of August, 2011, between the hours of 12:00 noon and 3:00 p.m., after having posted written notice of the time, place and terms of a public sale of the hereinafter described property, which written notice was posted at the courthouse door of Travis County, Texas, the county in which said real estate is situated, and which said notice was posted for at least twenty-one (21) days preceding the date of the sale, sell the hereinafter described property at public venue, in the area under the rear portion of the Courthouse located on the West side of the Courthouse immediately South of and slightly East of the intersection of 11th Street and San Antonio Street, and is referred to as the "Sallyport", Austin, Travis County, Texas, or any other area designated by the Commissioners Court of such County, pursuant to Section 51.002 of the Texas Property Code as the place where foreclosure sales are to take place, to FEDERAL NATIONAL MORTGAGE ASSOCIATION, the Grantee(s) herein, being the highest bidder, for the sum of $207,608.19; and

WHEREAS, from the affidavit hereto attached as Exhibit 'A' and made a part hereof, it appears that the beneficiary (holder of the indebtedness above described) served notice of such Substitute Trustee's Sale by certified mail at least twenty-one (21) days preceding the date of sale on each debtor obligated to pay such indebtedness according to the records of the beneficiary and as required by law; and

WHEREAS, all prerequisites required by law and/or by said Deed of Trust have been duly satisfied by the beneficiary therein and by said Substitute Trustee(s):

130

NOW, THEREFORE, in consideration of the premises and of the payment to me of the sum of $207,608.19, by the said Grantee(s), I/we, JUANITA STRICKLAND or JANIE MUCHA or CAROLYN A. TAYLOR, as Substitute Trustee(s), by virtue of the authority conferred upon me/us in said Deed of Trust, have GRANTED, SOLD AND CONVEYED, and by these presents do GRANT, SELL AND CONVEY, unto the said Grantee(s) and the Grantee(s) heirs, successors, administrators, executors and assigns, all of the following described property situated in Travis County, Texas:

LOT 12, BLOCK 19, OF THE VILLAGE AT WESTERN OAKS SECTION 16-C, A SUBDIVISION IN TRAVIS COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT, OF RECORD IN VOLUME 100, PAGE 354-357, OF THE PLAT RECORDS OF TRAVIS COUNTY, TEXAS;

TO HAVE AND TO HOLD the above described premises and property, together with the rights, privileges and appurtenances thereto belonging, unto the said Grantee(s) and the Grantee(s) heirs, successors, administrators, executors and assigns, forever; and I/we, JUANITA STRICKLAND or JANIE MUCHA or CAROLYN A. TAYLOR, as said Substitute Trustee(s), do hereby bind the said SHARON HADDOX and/or GERALD R. HADDOX, the Debtor(s) and the Debtor(s) heirs, successors, administrators, executors and assigns, to warrant and forever defend the said premises unto the said Grantee(s) and the Grantee(s) heirs, successors, administrators, executors and assigns forever, against the claim or claims of all persons claiming or to claim the same or any part thereof.

EXECUTED to be effective the 2nd day of August, 2011.



JUANITA STRICKLAND, Substitute Trustee

STATE OF TEXAS

COUNTY OF TRAVIS

Before me, the undersigned authority, on this 3rd day of August, 2011, personally appeared JUANITA STRICKLAND, known to me to be the person(s) whose name is/are subscribed to the foregoing instrument, and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed, and in the capacity therein stated.

THOMAS MCDOUGAL
Notary Public, State of Texas
My Commission Expires
April 24, 2015

NOTARY PUBLIC, STATE OF TEXAS

131

## AFFIDAVIT OF POSTING/FILING NOTICE OF SALE

STATE OF TEXAS

COUNTY OF TRAVIS

The undersigned, having knowledge of the matters hereinafter set forth, after being duly sworn, deposes and states under oath, as follows:

"On behalf of the holder of the indebtedness secured by a Deed of Trust, dated August 30, 1999, executed by SHARON HADDOX and spouse, GERALD R. HADDOX to EVERETT L. ANSCHUTZ, Trustee(s) and recorded in the office of the County Clerk under File No. 1999098156, Travis County, Texas; at least twenty-one (21) days preceding the date of the sale made by Substitute Trustee on the 2nd day of August, 2011, between the hours of 12:00 noon and 3:00 p.m.;

(i) Written notice of the proposed sale, designating the County in which the property securing the above Deed of Trust will be sold, was posted ("Notice of Sale") at the courthouse door of each County in which the property securing the above Deed of Trust is located, or as otherwise designated by the County Commissioners; and

(ii) A copy of said Notice of Sale was filed in the office of the County Clerk of the County in which the sale was made."

JUANITA STRICKLAND, Substitute Trustee

SUBSCRIBED AND SWORN TO before me on this 3rd day of August, 2011.

THOMAS MCDOUGAL
Notary Public, State of Texas
My Commission Expires
April 28, 2015

NOTARY PUBLIC, STATE OF TEXAS

STATE OF TEXAS

COUNTY OF TRAVIS

This instrument was acknowledged before me on this 3rd day of August, 2011, by JUANITA STRICKLAND.

THOMAS MCDOUGAL
Notary Public, State of Texas
My Commission Expires
April 28, 2015

NOTARY PUBLIC, STATE OF TEXAS

132

EXHIBIT 'A'

AFFIDAVIT

STATE OF TEXAS

COUNTY OF HARRIS

BEFORE ME, the undersigned authority, personally appeared the undersigned affiant, who, after being duly sworn, deposes and states under oath as follows:

(a) I am above the age of eighteen (18) years and am competent to make this affidavit and knowledgeable of the statements made in this affidavit.

(b) At the instructions of the holder of the indebtedness, or its agent, secured by a Deed of Trust, dated August 30, 1999, executed by SHARON HADDOX and spouse, GERALD R. HADDOX, to EVERETT L. ANSCHUTZ, Trustee(s) and recorded in the office of the County Clerk under File No. 1999098156, Travis County, Texas; and based upon the information provided by or on behalf of such holder or agent, the undersigned caused written notice of the proposed sale of the real property encumbered by said Deed of Trust scheduled for the 2nd day of August, 2011, to be mailed by certified mail return receipt requested on each debtor obligated to pay the indebtedness secured by said Deed of Trust according to the records of such holder or agent at least twenty-one (21) days preceding the date of the scheduled sale.

(c) To the best of the undersigned's knowledge and belief, the debtor(s), had not filed any bankruptcy proceedings, is/are alive and based upon information obtained from the U.S. Defense Manpower Internet military website, it is my belief that such debtor(s) is/are not in the armed services of the United States of America on the date hereof or nine months prior hereto.

_____
JANICE VESSELLA

STATE OF TEXAS

COUNTY OF HARRIS

SWORN TO and SUBSCRIBED before me this 3rd day of August, 2011.

_____
NOTARY PUBLIC, STATE OF TEXAS
TINA PAVLOCK
My Commission Expires December 2013

GRANTEE(S) ADDRESS:
2800 Esperanza Crossing
Austin, TX 78758

AFTER RECORDING RETURN TO:
Hughes, Watters & Askanase, L.L.P.
333 Clay, Suite 2900
Houston, Texas 77002
Attn: Foreclosure Department
Ref: 1000533255

FILED AND RECORDED
OFFICIAL PUBLIC RECORDS



DANA DEBEAUVOIR, COUNTY CLERK
TRAVIS COUNTY, TEXAS
August 12 2011 10:30 AM
FEE: $ 28.00   2011117441

133

**No. 03-15-00350-CV**

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

**GERALD R. HADDOX and SHARON HADDOX**
*Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
*Appellees.*

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. C-1-CV-14-005024

**APPENDIX ITEM 8**

Order for new trial                    CR 169

Cause No. C-1-CV-14-005024

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION | § | IN THE COUNTY COURT |
| Plaintiff | § | |
| | § | |
| v. | § | AT LAW NO. 2 |
| | § | |
| GERALD R. HADDOX AND SHARON HADDOX AND ALL OTHER OCCUPANTS | § | |
| Defendants | § | TRAVIS COUNTY, T E X A S |

## ORDER FOR NEW TRIAL

ON THIS DAY came on for consideration Plaintiff FEDERAL NATIONAL MORTGAGE ASSOCIATION'S Motion for New Trial. After reviewing the Motion for New Trial, the Response, and the arguments of counsel, if any, the Court finds that Plaintiff FEDERAL NATIONAL MORTGAGE ASSOCIATION'S Motion for New Trial should be in all things GRANTED.

IT IS THEREFORE ORDERED that the judgment signed on December 5, 2014 is VACATED and this case shall be set for a new trial on its merits.

SIGNED ON _Jan 12, 2015_

_____
JUDGE PRESIDING

**ERIC M. SHEPPERD**

FILED FOR RECORD
2015 JAN 13 AM 10:10
DANA DEBEAUVOIR
COUNTY CLERK
TRAVIS COUNTY, TEXAS

Case # C-1-CV-14-005024

2898866fa1wb/0209

169

**No. 03-15-00350-CV**

---

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

---

**GERALD R. HADDOX and SHARON HADDOX**
*Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
*Appellees.*

---

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. C-1-CV-14-005024

---

**APPENDIX ITEM 9**

---

Order on plea to the jurisdiction          CR 177

No. C-1-CV-12-009316

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION | § § § | IN THE COUNTY COURT |
| v. | § § | AT LAW NO. 2 |
| GERALD R. HADDOX and ALL OCCUPANTS OF 6508 Taylorcrest Drive Austin, Texas 78749 | § § § § § | TRAVIS COUNTY, TEXAS |

## ORDER
## ON DEFENDANTS' PLEA TO THE JURISICTION

Before the Court is the Plea to the Jurisdiction filed by Defendant Gerald Haddox.

After having considered the pleadings on file, arguments of counsel, and Defendant's

Plea, the Court is of the opinion that Defendants' Plea to the Jurisdiction is

MERITORIOUS.

THEREFORE, Defendants' Plea to the Jurisdiction is GRANTED, and it is hereby

ORDERED that:

~~All previous Orders entered in this case are withdrawn~~ this suit is DISMISSED and

Plaintiff shall take nothing by way of this action.

SIGNED this 17 day of ~~November~~ December, 2012.

_____
Judge Presiding

*Plea to the Jurisdiction*                                                    p. 5



**No. 03-15-00350-CV**

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

**GERALD R. HADDOX and SHARON HADDOX**
*Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
*Appellees.*

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. C-1-CV-14-005024

**APPENDIX ITEM 10**

Order on motion for reconsideration          CR 178

Cause No. C-1-CV-12-009316

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION | § § § | IN THE COUNTY COURT |
| *Plaintiff* | § § | |
| v. | § § | AT LAW NO. 2 |
| GERALD R. HADDOX AND SHARON HADDOX AND ALL OTHER OCCUPANTS | § § § § | |
| *Defendants* | § | TRAVIS COUNTY, T E X A S |

## ORDER

Came on for consideration Plaintiff's Motion for Reconsideration or, Alternatively, Rehearing, and the Court finds that it is well taken. It is therefore

ORDERED that the Plaintiff's Motion for Reconsideration or, Alternatively, Rehearing, on the eviction appeal is ~~GRANTED~~ *Denied*. It is further,

~~ORDERED that the hearing on the Plaintiff's Motion for Reconsideration or, Alternatively, Rehearing, of the eviction appeal is set for _____, 2012.~~

SIGNED this 23 day of ___January___, 2013

JUDGE PRESIDING

ENTRY REQUESTED:

HUGHES, WATTERS & ASKANASE, L.L.P.

Sarah S. Robbins
TBN: 24074966
Three Allen Center
333 Clay, 29th Floor
Houston, Texas 77002
(713) 759-0818
(713) 759-6834 FAX
Attorney for Plaintiff
Federal National Mortgage Association

2533178:1 FAIWB-0209



178

**No. 03-15-00350-CV**

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

**GERALD R. HADDOX and SHARON HADDOX**
*Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
*Appellees.*

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. C-1-CV-14-005024

**APPENDIX ITEM 11**

Order of the Justice Court                    CR 182

J3

CAUSE NO J2-CV-13-056393

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGATE ASSOCIATION | § § § | IN THE JUSTICE COURT |
| Plaintiff | § § | |
| v | § § | PRECINCT THREE |
| | § § | |
| GERALD R. HADDOX AND SHARON HADOXAND ALL OTHER OCCUPANTS | § § § | |
| Defendants | § | TRAVIS COUNTY, TEXAS |

## ORDER

On this the 9th day of December, came on to be heard Plaintiff's *Complaint for Forcible Detainer and Original Petition* and Defendant's *Gerald R. Haddox's Original Answer, Plea to the Jurisdiction and Motion to Dismiss* filed herein. Plaintiff appeared through counsel and announced ready to proceed. Defendant appeared through counsel and announced ready to proceed. It is apparent from the evidence and argument of counsel and the law presented to the Court that Defendant's Motion to Dismiss is meritorious and should be granted.

IT IS THEREFORE ORDERED that this case is hereby dismissed.

IT IS FURTHER ORDERED that Attorney's fees in the amount of $ 750 are awarded against Plaintiff, and in favor of Defendant for the use and benefit of GERALD R. HADDOX's attorneys. These fees are to be paid directly to GERALD R. HADDOX's attorneys no later than February 28, 2014.

SIGNED on this the 13 day of January, 2014.

Susan Steeg
Judge Presiding



182

**No. 03-15-00350-CV**

---

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

---

**GERALD R. HADDOX and SHARON HADDOX**
*Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
*Appellees.*

---

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. C-1-CV-14-005024

---

**APPENDIX ITEM 12**

---

Corporate Assignment                    RR Vol.4, p. 28

 

Loan #: 511327

## CORPORATE ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC FEDERAL BANK,FSB, SUCCESSOR TO INDYMAC BANK, F.S.B., WHOSE ADDRESS IS 6900 BEATRICE DR., KALAMAZOO, MI 49009, (ASSIGNOR)**, by these presents does convey, grant, sell, assign, transfer and set over the described deed of trust together with the certain note(s) described therein, together with all interests secured thereby, all liens, and any rights due or to become due thereon, to **OneWest Bank, FSB, WHOSE ADDRESS IS 888 E. WALNUT STREET, PASADENA, CA 91101, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE)**

Said Deed of Trust dated 08/30/1999 executed by **SHARON HADDOX AND GERALD R. HADDOX** and recorded as Instr# 1999098156 in Book , Page  in the records of Real Property of TRAVIS County, Texas.

This assignment is made without recourse, representation or warranty, express or implied, by the FDIC in any capacity.
IN WITNESS WHEREOF, the said corporation has caused these to be signed by its duly authorized officer, 05/28/2010.
**FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC FEDERAL BANK,FSB, SUCCESSOR TO INDYMAC BANK, F.S.B.**

By: _____
    BRYAN BLY
    ATTORNEY-IN-FACT

STATE OF FLORIDA
COUNTY OF PINELLAS
BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared BRYAN BLY known to me to be the person and officer whose name is subscribed to the foregoing instrument and acknowledged to me that the same was the act of the said FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC FEDERAL BANK,FSB, SUCCESSOR TO INDYMAC BANK, F.S.B., a corporation, and that they executed the same as the act of such corporation for the purposes and consideration therein expressed, and in the capacity therein stated.
GIVEN UNDER MY HAND AND SEAL OF OFFICE 05/28/2010.

_____
CHRISTOPHER JONES   Notary Public
My commission expires:08/03/2012

> Christopher Jones
> Notary Public, State of Florida
> Commission # DD 811078
> Expires August 03, 2012
> Bonded Through National Notary Assn.

**Document Prepared By: Robert E. Fletcher - c/o NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

When Recorded Return to:
OneWest Bank, FSB
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

OWBAS 11253194  USB-OWBAS --  CJ2577013  form5/frmtxg1

*11253194*

## FILED AND RECORDED
OFFICIAL PUBLIC RECORDS

Jun 22, 2010  02:28 PM   2010089111
PEREZTA: $16.00
Dana DeBeauvoir, County Clerk
Travis County  TEXAS

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on **MAR 12 2015**
Dana DeBeauvoir County Clerk
By Deputy S. WILLIAMS

EXHIBIT
D-1

**No. 03-15-00350-CV**

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

**GERALD R. HADDOX and SHARON HADDOX**
*Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
*Appellees.*

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. C-1-CV-14-005024

**APPENDIX ITEM 13**

Affidavit of Lost Assignment                    RR Vol.4, p. 30

 
511327L

## AFFIDAVIT OF LOST ASSIGNMENT

The undersigned BRYAN BLY, being duly sworn deposes and states as follows:

1. That (s)he is a/an ATTORNEY-IN-FACT of FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC FEDERAL BANK,FSB, SUCCESSOR TO INDYMAC BANK, F.S.B. having its principle place of business at 6900 BEATRICE DR., KALAMAZOO, MI 49009  , an officer duly authorized to make this affidavit.

2. That (s)he has personal knowledge of the facts set forth in this Affidavit.

3. That FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR INDYMAC FEDERAL BANK,FSB, SUCCESSOR TO INDYMAC BANK, F.S.B. ("Current Mortgagee") is the owner and holder of a certain mortgage dated 08/30/1999 made by SHARON HADDOX AND GERALD R. HADDOX as mortgagors to NATIONAL MORTGAGELINK, I LTD as original mortgagee, which mortgage was recorded in the office of the Register or Recorder/Clerk of TRAVIS County, State of Texas on 09/01/1999 in Book/reel  page  or Clerk/Doc# 1999098156. This loan may or may not have been further assigned.
The mortgage premise are known as: 6508 TAYLORCREST DR, AUSTIN, TX 78749

4. That Current Mortgagee owns and holds said mortgage as a result of sale and assignment thereof to Current Mortgagee from NATIONAL MORTGAGELINK, I LTD  ("Mortgagee of Record").

5. That the files and records of Current Mortgagee relating to the mortgage do not contain either a recorded or an unrecorded instrument of an assignment from Mortgagee of Record to Current Mortgagee.

6. That the Affiant has concluded that the Assignment was lost, misplaced or destroyed before the same could be placed of record.

7. That Current Mortgagee is unable to obtain an instrument confirming the sale and assignment of said mortgage from the Mortgagee of Record.

8. That Current Mortgagee duly and properly acquired the mortgage, and has thereafter serviced the same and has in its possession the Note secured thereby and all of the other mortgage loan documentation pertaining to said mortgage.

9. That Current Mortgagee is the owner of the mortgage and the Note secured thereby, and has not further assigned or transferred said Note and mortgage to any other party.

10. That this affidavit is made to induce the Register/Recorder of said county to accept for recording this instrument, executed and acknowledged by Current Mortgagee, in place of said lost, misplaced or destroyed assignment.



*11959965*

**MAR 1 2 2015**

I, Dana DeBeauvoir, County Clerk, Travis County, Texas, do hereby certify that this is a true and correct copy as same appears of record in my office. Witness my hand and seal of office on

Dana DeBeauvoir County Clerk

J. S. WILLIAMS



EXHIBIT

No. 03-15-00350-CV

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

**GERALD R. HADDOX and SHARON HADDOX**
*Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
*Appellees.*

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. C-1-CV-14-005024

**APPENDIX ITEM 14**

Notice of Forfeited Rights                    RR Vol.4, p. 33-34

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Carlos Cascos
Secretary of State

# Office of the Secretary of State

The undersigned, as Secretary of State of Texas, does hereby certify that the attached is a true and correct copy of each document on file in this office as described below:

NATIONAL MORTGAGELINK I, LTD.
Filing Number: 7566210

Notice of Forfeited Rights for Non-Filing of
Periodic Report

July 07, 2006

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on March 12, 2015.



Carlos Cascos
Secretary of State



EXHIBIT
D-3

<em>Come visit us on the internet at http://www.sos.state.tx.us/</em>

Phone: (512) 463-5555
Prepared by: CTOBAR

Fax: (512) 463-5709
TID: 10266

Dial: 7-1-1 for Relay Services
Document: 595747200002



Roger Williams
Secretary of State

# Office of the Secretary of State

July 7, 2006

Stephen F Sampaulesi
NATIONAL MORTGAGELINK I, LTD.
3934 FM 1960 WEST, STE. 100
Houston, TX 77068

**Periodic Report – Second Notification Letter**

Re: NATIONAL MORTGAGELINK I, LTD.
File Number: **7566210**

Dear Registered Agent:

Our records show that the above referenced limited partnership was notified over thirty (30) days ago of the need to file with this office the report required by law. You are hereby notified that the limited partnership's right to conduct affairs has been forfeited as of the date of this letter for failure to file the report. The limited partnership's right to conduct affairs may be revived by submitting the attached periodic report to this office, along with the required filing fee. This periodic report should be completed and received by this office on or before **November 6, 2006** to avoid the cancellation or termination of the domestic limited partnership or the cancellation or revocation of the registration of the foreign limited partnership.

One copy of the required periodic report is enclosed, along with instructions for completing the report. Make any necessary changes to the preprinted information by typing or printing the new information in the area provided. Submit the periodic report, along with the required filing fee that is shown on the attached report, to the mailing address on the report form. **Please make a copy of this report prior to mailing and retain for the limited partnership's records.**

Please disregard this notice if you have mailed your document for processing within the last seven (7) days. If your records reflect that you filed the required report, please send a copy of your cancelled check showing payment of the filing fee.

For your convenience, the periodic report may be filed online through SOSDirect at
**http://www.sos.state.tx.us/corp/sosda/index.shtml**.

If you have any questions about filing the periodic report or require assistance filing online using SOSDirect, please call 512-475-2705 or e-mail ReportsUnit@sos.state.tx.us.

Sincerely,
Reports Unit
Business and Public Filings Division

Enclosure

**No. 03-15-00350-CV**

---

In The Court of Appeals
For the Third District Court of Appeals
Austin, Texas

---

**GERALD R. HADDOX and SHARON HADDOX**
*Appellant,*

v.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**
*Appellees.*

---

ON APPEAL FROM THE COUNTY COURT AT LAW NO. 2, TRAVIS COUNTY, TEXAS
TRIAL COURT CAUSE NO. C-1-CV-14-005024

---

**APPENDIX ITEM 15**

---

Certificate of Limited Partnership

FILED
In the Office of the
Secretary of State of Texas

JUL 2 6 1994

Corporations Section

## CERTIFICATE OF LIMITED PARTNERSHIP

## NATIONAL MORTGAGELINK, I LTD.

Pursuant to the provisions of Section 2.01 of the Texas Revised Limited Partnership Act (Art. 6132a-1, Texas Revised Civil Statutes Annotated, hereinafter referred to as the Act), National Mortgagelink, Ltd. One files this, its Certificate of Limited Partnership, as follows:

1.    The name of the partnership is **NATIONAL MORTGAGELINK, I LTD.**

2.    The address of the registered office and the name and address of the registered agent for service of process are:

| | |
|---|---|
| Registered Office: | 2100 West Loop South<br>Suite 800<br>Houston, Texas 77027 |
| Name and Address of<br>Registered Agent: | Stephen F. Sampaulesi<br>2100 West Loop South<br>Suite 800<br>Houston, Texas 77027 |

3.    The address of the principal office in the United States where the records of the partnership where records are to be kept or made available under Section 1.07 of the Act is:

2100 West Loop South
Suite 800
Houston, Texas 77027

4.    The name, mailing address, and street address of the business or residence of each general partner are:

| | |
|---|---|
| Name: | National Mortgagelink, Inc. |
| Mailing Address: | 2100 West Loop South<br>Suite 800<br>Houston, Texas 77027 |
| Street Address: | 2100 West Loop South<br>Suite 800<br>Houston, Texas 77027 |

1

5.   Other matters the general partners determine to include:

NONE

In witness whereof, these presents are duly executed by the general partner of the partnership on this the _____22_____ day of ___July___, 19_94_.


National Mortgagelink, Inc. (General Partner)

By:_____

Stephen F. Sampaulesi/President

# CHRISTOPHER A. COLVERT
## ATTORNEY AT LAW

Telephone
(713) 293-9338

14825 St. Mary's Lane
Suite 270
Houston, Texas 77079

Telecopier
(713) 293-9383

July 14, 1994

Secretary of State
Corporate Division
P. O. Box 13697
Austin, Texas 78711

Re: NATIONAL MORTGAGELINK, LTD.

Dear Sir:

We are enclosing one original and one copy of the Partnership Agreement for the subject limited partnership with a check in the amount of $760.00 in payment of the filing fee, special handling fee.

Should any questions arise in connection with the filing of these Articles, please call me by telephone collect.

Thank you for your cooperation and assistance in this matter.

Very truly yours,

Christopher A. Colvert

nml_tran
Enclosure

RECEIVED
SECRETARY OF STATE

JUL 2 0 1994

CORPORATIONS SECTION
MAIL CLERK 4

AGREEMENT OF LIMITED PARTNERSHIP

NATIONAL MORTGAGELINK, LTD.

(A TEXAS LIMITED PARTNERSHIP)

THESE SECURITIES HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 IN RELIANCE UPON THE INTRASTATE OFFERING EXEMPTION PROVIDED BY SECTION 3(s)(11) OF THE SECURITIES ACT OF 1933 AND THE GUIDELINES RELATING THERETO SET OUT IN RULE 147 OF THE SECURITIES AND EXCHANGE COMMISSION. DURING THE PERIOD IN WHICH THE SECURITIES COMPRISED WITHIN THIS RULE 147 ISSUE ARE BEING OFFERED AND SOLD BY THE ISSUER IN TEXAS AND FOR A PERIOD OF 9 MONTHS FROM THE DATE OF THE LAST SALE BY THE ISSUER OF SUCH SECURITIES, ALL RESALES OF ANY PART OF THIS RULE 147 ISSUE BY ANY PERSON MAY BE MADE ONLY WITHIN THE STATE OF TEXAS.

AGREEMENT OF LIMITED PARTNERSHIP

NATIONAL MORTGAGELINK, LTD.

(A TEXAS LIMITED PARTNERSHIP)


This AGREEMENT OF LIMITED PARTNERSHIP made and entered into as of the 14th day of July, 1994, by and between National Mortgagelink, Inc. (hereinafter sometimes called the "General Partner"), and those other persons whose names are subscribed at the end hereof as limited partners (hereinafter sometimes collectively called the "Limited Partners"). The General Partner and all Limited Partners are sometimes hereinafter collectively referred to as "Partners".

## W I T N E S S E T H:

In consideration of the mutual covenants and agreements herein contained and other good and valuable consideration, the parties hereto hereby form a Limited Partnership under and pursuant to the Texas Uniform Limited Partnership Act, upon the following terms and conditions:

Article 1.

## GENERAL


1.1    Partnership Name. The name of the Partnership shall be National Mortgagelink, Ltd.

1.2    Principal Office. The principal place of business of the Partnership shall be 2100 West Loop South, Suite 800, Houston, Texas 77027.

1.3    Organizational Matters. The Partners immediately shall execute all such certificates and other documents, make such filings and recordings, and perform such acts as shall constitute a compliance with all requirements for the formation and operation of a limited partnership under the laws of the State of Texas.

1.4    Term of Partnership. The Partnership shall commence on the filing and acceptance of the Certificate of Limited Partnership by the Secretary of State of Texas and shall continue until December 1, 2033, unless sooner terminated as hereinafter set forth in Section 9.1.

1.5    Purpose of the Partnership. The specific business and purpose of the Partnership is to engage in leasing and subleasing of offices and equipment and to engage in mortgage lending and related services, including, but not by way of limitation, mortgage origination, processing and servicing; provision of clerical and office support to individuals and organizations associated with the mortgage lending process; and location and recruitment of mortgage investors, appraisers, surveyors, engineers, realtors and other professionals associated with the mortgage lending process.

Article 2.

## CAPITAL CONTRIBUTIONS OF PARTNERS

2.1    Initial Contributions. Upon execution hereof, each of the Partners shall contribute to the capital of the Partnership the amount set forth opposite his name at the end of this Agreement. The Percentage Interest of each Partner in the Partnership shall be the proportion which his initial capital contribution bears to the initial capital contributions of all Partners and the initial Percentage Interests so determined for each Partner are set forth opposite the signatures of each such Partner at the end of this Agreement.

2.2    Additional Contributions. Each Limited Partner may acquire additional interests in the Partership on the terms then in effect for admission of limited partners in the Partnership.

Article 3.

## ACCOUNTING

3.1    Method of Accounting. The Partnership shall keep accounts on the case basis. The accounts shall readily disclose all items which the Partners are required to take into account separately for income tax purposes. Asto matters of accounting not provided for in this Agreement, generally accepted accounting practices shall govern.

3.2 Reports. Annually each Partner shall be furnished a statement of the cash receipts and disbursements of the preceding year, which may or may not, at the option of the General Partner, be audited by a certified public accountant.

3.3 Books. The Partnership books shall be kept at the principal place of business of the Partnership in Houston, Texas, and each Partner, at his own expense, shall at all reasonable times during regular office hours have access to such books for the purpose of inspecting and copying same.

3.4 Bank Account. The Partnership shall maintain accounts in its name in one or more banks, and the cash funds of the Partnership shall be kept in such accounts.

3.5 Fiscal Year. The Fiscal year of the Partnership shall be the calendar year.

Article 4.

## RIGHTS AND OBLIGATIONS OF PARTNERS

4.1 Limited Partners. The Limited Partners shall not take part in the management of the Partnership business or transact any business for the Partnership, shall have no power to sign for or to bind the Partnership, and shall not be personally liable for any of the debts or obligations of the Partnership, or for any of the losses of the Partnership, beyond the amount of capital contributed (or agreed to be contributed) by them to the Partnership.

4.2 General Partner. The General Partner shall have full, exclusive, and complete discretion in the management and control of the affairs of the Partnership for the purposes herein stated including, but not by way of limitation, the full and exclusive power to borrow funds in the name of the Partnership and to enter into contracts on behalf of the Partnership and to acquire, hold, lease, encumber and dispose of such property, whether real, personal or mixed, on behalf of the Partnership as it may deem necessary, appropriate or advisable; shall make all decisions affecting Partnership affairs; and shall have full power and authority to negotiate the terms of and execute such documents and instruments relating to Partnership affairs as may in its opinion be appropriate, necessary or advisable; provided, that the General Partner shall not, without consent of Partners having a Percentage Interest of fifty-one percent (51%) or more in the Partnership, sell, mortgage or otherwise dispose of or encumber the property of the Partnership except in the ordinary course of Partnership business. No person, firm or corporation dealing with the Partnership shall be required to inquire into the authority of the General Partner to take any action or make any decision.

5

## Article 5.

## COMPENSATION TO GENERAL PARTNER

5.1    Management Fee.   The General Partner shall be entitled to be paid, for the management services it is to render to the Partnership, those sums set forth hereinbelow:

In addition to any other fees which the General Partner may charge and collect from the Partnership for management services, the General Partner shall be entitled to charge and collect from the Partnership a management fee measured by the receipts of the Partnership for file handling charges (the "Fees") as follows:

a.   With respect to any Fees not attributable to a Limited Partner, the General Partner shall be entitled to receive one-half of such Fees.

b.   With respect to any Fees attributable to a Limited Partner who has received distributions of cash and property from the Partnership equal to such Limited Partner's initial capital contribution, the General Partner shall be entitled to receive one-half of such Fees.

c.   With respect to any Fees attributable to a Limited Partner who has not received distributions of cash and property from the Partnership equal to such Limited Partner's initial capital contribution, the General Partner shall be entitled to receive one-third of such Fees.

The provisions of this Article 5.1 may be expanded, altered, modified, amended and supplemented by means of a management contract between the Partnership and the General Partner.

5.2    Brokerage Agreement.   By execution of this Agreement, the Partners hereby further expressly agree that the General partner shall have the authority, in its sole and absolute discretion, to name and appoint a brokerage agent (including the General partner or its affiliates) and the authority to execute an irrevocable and exclusive listing or brokerage agreement with such agent providing for the payment to such agent or his assigns (at closing) of a cash commission equal to six percent (6%) of the total sales price on any sale, contract of sale or exchange of the property or business of the Partnership, or any portion thereof.

## Article 6.

## EXPENSES AND OTHER CHARGES TO THE PARTNERSHIP

6.1    Permitted Expenses and Charges.   The General Partner may charge to the Partnership any pay or recover out of Partnership funds, as and when available, the following: All reasonable expenses incurred by the General Partner to acquire, preserve, protect, or perfect

6

the title to the property or business of the Partnership or to operate or maintain such property or business, including, but not limited to, management consulting fees, travel expenses, attorney's fees and court costs incurred in connection with such matters; the cost of public liability insurance carried in connection with the business of the Partnership; and taxes on real or personal property of the Partnership.

6.2     Expenses and Charges not Chargeable to the Partnership. No expenses or charges shall be paid or recovered out of Partnership funds except those provided for in Article 6.1 hereof.

Article 7.

SALES AND OTHER DISPOSITIONS OF PARTNERSHIP INTERESTS

7.1     General Partner. The General Partner may not, without the consent of all of the Limited Partners, assign its interest in the Partnership.

7.2     Limited Partners. An assignee, heir or legatee of a Limited Partner (to the extent of the Partnership Interest acquired from the Limited Partner) shall be entitled to receive the share of the Partnership profits and distributions to which the Limited Partner from or under whom such interest was acquired would have been entitled and shall be obligated to make any additional contributions which the assigning Limited partner would have been required to make hereunder; provided that such assignee, heir or legatee shall not, without compliance with the provisions of Sections 7.3 and 7.4 hereof, become or have the rights of a Substituted Limited Partner as that term is used in the Texas Uniform Limited Partnership Act. The General Partner as Trustee may acquire an interest as a Limited Partner and the Partners hereby agree that the preferential purchase options afforded the Partners under the provisions of Article 7.4 of this Agreement are waived and relinquished with respect to such interest for a period of not more than one year from the date of this Agreement. It is understood, however, that such purchase options are not waived as to any sale or other disposition of such interest by an assignee of the General Partner as Trustee.

7.3     Notice of Assignment. Notwithstanding anything in the partnership law of Texas to the contrary, no transfer of any Limited Partner's interest, although otherwise valid, shall be recognized by the Partnership until the following steps have been completed:

(a) The transferor shall have given written notice thereof to and received the approval of the General Partner, and the transferee has in writing agreed to be bound by the terms of this Agreement; the granting or denial of which approval shall be within the sole, absolute discretion of the General Partner;

(b) The transferor has complied with Section 7.4 hereof;

(c) The assignee to be substituted, the General Partner and all Limited Partners (either

individually or by virtue of the General Partner's power of attorney set forth in Section 10.6 hereof) shall execute an appropriate amendment to the Certificate of Limited Partnership and such other instruments as the General Partner may deem appropriate; and

(d) All costs and expenses, if any, incurred by the General Partner or the Partnership in effectuating the provisions of this Section, including all attorneys' fees and filing costs, shall have been reimbursed to the General partner or the Partnership.

If the transferor is deceased or incompetent, certified copies of any court order or documents may be submitted in lieu of the documents which a transferring Limited Partner is required to submit under the provisions of this Section. Any purported assignment consummated without first complying with this Section shall, as between the General partner, on the one hand, and the assignor and assignee, on the other hand, be null and void.

7.4 **Purchase Options**. Should any Limited Partner desire to sell or otherwise dispose of his interest in the Partnership, or any portion thereof, he shall first deliver to each of the other Partners a written instrument in which he shall:

(a) State his intention to sell or dispose of his interest, or designated portion thereof;

(b) State the price and terms of the best bona fide offer he has received for the purchase of such interest, or portion thereof, and the name and address of the offeror(s) making such offer; and

(c) Offer to sell such interest, or portion thereof, to such of the other partners who are not then classified as Non-Contributing Partners hereunder on the same terms and conditions at any time within ten (10) days after the delivery of such written offer to such other Partners.

At any time during the ten (10) day period after the delivery of such offer, the Partners receiving such offer shall have the prior right and option to purchase the Partnership Interest, or designated portion thereof, of the selling Limited partner on the terms and at the price set forth in the offer. If this option is not exercised by any of such other Partners, the selling Limited Partner may, at any time within thirty (30) days after the expiration of such ten (10) day period, sell (subject to Article 7.2) his interest, or designated portion thereof, in the Partnership to the offeror(s) named in offer, on the terms and at the price stated in such offer, provided the sale and conveyance is expressly made subject to the provisions hereof and further provided that the purchaser assumes all (or a proportionate part) of the obligations of the selling Limited Partner hereunder. If the sale is not completed within such thirty (30) day period, the notice given to the other partners shall be deemed to have expired and a new notice and option shall be required before any sale or disposition is made of the Partnership Interest (or any portion thereof) of the selling Limited Partner.

8

All rights and options provided for in this Article 7.4 may be exercised by the Partners entitled and electing to exercise the same in the proportions that their respective Percentage Interests in the partnership (as owned by them at the time of exercise of each such right and option) bear to each other.

Notwithstanding any provision in this Agreement to the contrary, no Partner may sell or otherwise dispose of his interest in the Partnership for a period which expires nine (9) calendar months following the date of sale of the last interest to the partners who comprise the General partner and the Limited Partners (excluding Substitute Limited Partners) and in no event shall any Partnership interest be offered or sold to any person not a resident of the State of Texas.

Article 8.

## SHARING OF PARTNERSHIP INCOME, EXPENSES OR LOSSES

8.1    Allocation of Income, Expenses, and Losses.  Subject to the provisions of Article 5, 99% of the net profits and losses of the Partnership, and each item of income, gain, loss, deduction or credit entering into the computation thereof, shall be allocated to the Limited Partner's capital accounts pro rata, in accordance with their respective Partnership percentage, and 1% of such net profits and losses and items of income, gain, loss, deduction or credit entering into the computation thereof, shall be allocated to the General Partner's capital account.

8.2    Distributions of Partnership Funds.  The General Partner may distribute cash and other property to the General Partner and the Limited Partners at such time and in such amounts as it may determine are in the best interest of the Partnership; provided, however, that all such distributions shall only be made to the General Partner and the Limited Partners in the respective pro rata portions of their then current ownership of interest in the Partnership.

Article 9.

## DISSOLUTION

9.1    Causes of Dissolution.  The Partnership shall be dissolved upon the occurrence of the first of the following events:

(a)  Bankruptcy, withdrawal, or dissolution of the General Partner; or

(b)  Execution of a written agreement to dissolve by Partners owning at least 66-2/3% interest in the Partnership; or

(c)  Upon disposition of all the property and business of the Partnership; or

(d)  December 1, 2033.

For purposes of the foregoing sentence, assignment by the General Partner of its interest in the Partnership shall not be considered a withdrawal.

9.2 <u>Winding Up and Termination</u>. Upon final dissolution of the Partnership, its business shall be wound up and liquidated as rapidly as business circumstances will permit, such liquidation to be handled by the General Partner as Liquidating Trustee except as provided in Article 9.3. The assets and properties of the Partnership shall be used, applied, and distributed in the manner hereinafter provided.

9.3 <u>Election by Partners of Liquidating Trustees</u>. If the dissolution of the Partnership is caused by the bankruptcy, withdrawal, or dissolutions of the General Partner, then three Liquidating Trustees shall be selected to perform the functions of winding up and terminating Partnership affairs as herein provided. The Liquidating Trustees shall be elected by the vote of Limited Partners who were original members of the Limited Partnership at its formation, or who pursuant to Article 7.2 hereof became Substitute Limited Partners, owning (at the time of dissolution) at least fifty-one percent (51%) of the aggregate interest in the Partnership of such Limited Partners. The Liquidating Trustees may be partners or qualified outsiders, or both.

9.4 <u>Distribution of Assets on Dissolution</u>. On dissolution of the Partnership for any cause, prior to sale of all of the property and business of the Partnership, or remaining portion thereof, the property and business of the Partnership shall be conveyed to the Partners in undivided interests equal to their respective Percentage Interests in the Partnership on the date of such dissolution, subject however, to a proportionate part of all debts, liens and contracts then outstanding against such property, and to any agreements between the General Partner and a brokerage agent, under Article 5.2 above.

Notwithstanding any provision in this Article 9.4 to the contrary, it is understood that the Liquidating Trustee or Trustees may with the consent of Partners having a Percentage Interest of fifty-one percent (51%) or more in the Partnership, or without such consent to the extent necessary to pay Partnership obligations then due, sell the remaining property of the Partnership, or any portion thereof, pay all Partnership obligations (to the extent possible) and thereafter distribute any remaining funds of the Partnership or any remaining property of the Partnership to the Limited Partners in their then respective percentage Interests.

Article 10.

MISCELLANEOUS

10.1 <u>Notices, Reports, and Statements</u>. All notices, reports and statements hereunder shall be deemed to have been properly furnished if mailed from within the United States by first class United States mail (or certified mail, return receipt requested, where specifically called for), postage prepaid, addressed in each case to the Partners entitled thereto at the addresses set forth below their names at the end of this Agreement, or to such other address or addresses as any of the Partners shall have designated to the others in writing.

10

10.2    Additional Instruments.  Each Partner hereby agrees to execute all such agreements, certificates, tax statements, tax returns, and other documents as may be required by law to effectuate the agreements contained herein.

10.3    Applicable to Successors.  This Agreement and each provision herein (including the provisions relating to purchase rights) shall be binding upon and applicable to, and shall inure to the benefit of, the parties hereto and their respective heirs, legatees, devisees, successors, assigns, and legal representatives, except as otherwise expressly provided herein.

10.4    Counterparts.  This Agreement may be signed in any number of counterparts, each of which shall be an original for all purposes, but all of which taken together shall constitute only one agreement.  The production of any executed counterpart of this Agreement shall be sufficient for all purposes without producing or accounting for the other counterparts thereof.

10.5    Elections by Partnership as to Optional Adjustment to Basis.  Upon the request of any Partner filed in writing with the General Partner, the Partnership shall file an election under Section 754 of the Internal Revenue Code of 1986 in accordance with the procedure set forth in the applicable Treasury Regulations.

10.6    Power of Attorney.  Each Limited Partner by the execution of this Agreement does irrevocably constitute and appoint the General Partner as his true and lawful attorney, in his name, place and stead, to execute, acknowledge and file with the Secretary of the State of Texas, a Certificate of Limited Partnership and all other certificates and instruments necessary to qualify or continue the Partnership as a Limited Partnership in the State of Texas and to execute, acknowledge and file an Assumed Name Certificate for the Partnership.  The power of attorney granted herein shall be deemed to be coupled with an interest and shall survive the death or incompetency of a Limited Partner.

10.7    Indemnification of the General Partner.  The General Partner, shall be indemnified and held harmless by the Partnership from and against any and all claims, demands, liabilities, costs, damages and causes of action of any nature whatsoever, arising out of or incidental to the management of the Partnership affairs; provided, however, that such parties shall not be entitled to indemnification hereunder where the claim at issue is based upon:

(a)  a matter entirely unrelated to the management of the Partnership affairs;

(b)  the proven gross negligence or willful misconduct of the General Partner; or

(c)  the proven breach by the General Partner of any provision of this Agreement.

The indemnification rights herein contained shall be cumulative of, and in addition to, any and all other rights, remedies and recourses to which the General Partner, shall be entitled,

11

whether pursuant to some other provision of this Agreement, at law or inequity.

10.8 Severability. This Agreement is intended to be performed in accordance with, and only to the extend permitted by, in all applicable laws, ordinances, rules and regulations of the jurisdictions in which the Partnership does business. If any provision of this Agreement, or the application thereof to any person or circumstance, shall, for any reason and to any extent, be invalid or unenforceable, the remainder of this Agreement and the application of such provision to other persons or circumstances shall not be affected thereby, but rather shall be enforced to the greatest extend permitted by law.

10.9 Law Governing. This Agreement shall be governed by and construed in accordance with the laws of the State of Texas.

10.10 Amendments. If the General Partner shall propose in writing to the Limited Partners the adoption of an amendment to this agreement, and if, within a reasonable time thereafter (such time to be specified in the proposal), seventy-five percent (75%), in interest, of the Limited Partners give their written consent thereto, then such amendment shall become effective as of the date specified in the proposal. Thereafter, each Limited Partner (or, to the extent permitted by law and pursuant to the powers granted him under Section 10.6 hereinabove, the General Partner) shall promptly execute, or cause to be executed, an amendment to this Agreement and to the Certificate in such form as the General Partner may deem appropriate. This Section 10.10 shall not apply to amendments necessitated because of assignments of Partnership Interests.

NATIONAL MORTGAGELINK, LTD.

NATIONAL MORTGAGELINK, INC. (GENERAL PARTNER)

By:_____

  Stephen F. Sampaulesi, President

Date:___7/13/94___

LIMITED PARTNER:

_____

Stephen F. Sampaulesi

Percentage Interest:_____

Initial Capital Contribution:___$20,000___

Social Security of Taxpayer Identification Number:___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___

12

## ACKNOWLEDGEMENT FOR LIMITED PARTNER

STATE OF TEXAS        X

COUNTY OF HARRIS      X


      BEFORE ME, the undersigned authority, on this day personally appeared _Stephen F. Sampauesl_, a Limited Partner of _National Mortgage VR, Ltd._, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed and in the capacity therein stated.

      GIVEN UNDER MY HAND and SEAL OF OFFICE, this the _13th_ day of _July_, 19_94_.


           _Rebecca P. B_____
           NOTARY PUBLIC in and for
           HARRIS COUNTY, TEXAS

           My Commission Expires: _6-16-97_

SEAL

REBECCA C. BURTON
Notary Public, State of Texas
My Commission Expires June 16, 1997

           _Rebecca C. Burton_
           Printed Name of Notary Public

13